### CLARK v. EVANS *et al.*

1. Where the question is whether certain premises which a party had formerly occupied constituted at that time his homestead or not, such party may be allowed to testify for what purpose and with what intention he used or occupied such premises at the time.

2. It is the use with intent, or the use and intent combined, which impresses the homestead stamp upon real estate.

3. Upon the question of residence, or intent, it is competent to show that the person upon whose residence and intent such homestead right must depend was elected to, qualified, and held a public office to which he would not have been eligible if his residence or home was upon the premises sought to be established as his homestead.

4. The legal effect of section 5260, Comp. Laws, is that so long as the relation of husband and wife exists neither can testify for or against the other, except by consent. After such relation is terminated, and the parties are no longer husband and wife, neither can, without the consent of the other, testify to communications made between them while such relation existed.

5. Where the head of a family comes to, and resides in, this state alone, the wife, who remains in a distant state, acquires only such homestead rights in property here as result from and rest upon the homestead rights of her husband; if he acquires none, she has none.

(Syllabus by the court.    Opinion filed Nov. 19, 1894)

Appeal from circuit court, Hughes county.    HON. H. G. FULLER, Judge.

Action to foreclose a mortgage. Judgment for plaintiff, and defendant, Jennie Evans appeals, Affirmed,

The facts are stated in the opinion.

*Crawford & DeLand* for appellant.

The record of evidence given by a witness in another suit cannot be introduced to impeach the witness on cross examination until its accuracy has been established and identity proved. Rehberg v. City, 2 N. E. 14; Stayner v. Joyce, 22 N. E. 89; Misner v. Darling, 7 N. W. 77; Seligman v. Ten Eych, 18 N. W. 818.

Appellant had a right to select this property as her homestead and her husband could not testify either for or against her without her consent. Comp. Laws §§ 2458 and 5260; Bonheim v. Howking, 63 Tex. 1; Smythe Hom. & Exemp. 284; Dunn v. Tozier, 10 Cal. 167.

The homestead right cannot be waived except by abandonment by husband and wife executing the same joint instrument or by a judgment for the purchase money. Thom. Home. § 447; Bruner v. Bateman, 66 Ia. 448; Clay v. Richardson, 59 Ia. 483; Donner v. Redenbaugh, 61 Ia. 269. The domicile of the husband is the domicile of the wife. Williams v. Moody, 28 N. W. 510; Herron v. Knepp, 40 N. W. 150; Kasham v. Kasham, 3 Cal. 312; Timon v. Moore, 43 Ill. 169; 5 Am. & Eng. Ency. Law, 868; Sherid v. Southnick, 5 N. W. 1029. Where a wife is compelled by the cruelty of her husband to leave his home she loses none of her rights thereby. Keyes v. Scanlan, 23 N. W. 572; Burke v. Dayton, 28 Wis. 368. The wife's domicile follows that of her husband, whether or not she accompanies him to her new place of abode. Jacobs Domicile, § 214; Republic v. Young, Dallam (Tex.) 464; Russell v. Randolph, 11 Tex. 460; Lacy v. Clements, 36 Tex. 661; Johnson v. Turner, 29 Ark. 280; Barlen v. Shannon, 115 Mass. 438.

A new trial can work no substantial injury to anyone and a refusal to grant it might possibly have worked a serious injury. Smith v. Smith, 8 N. W. 868.

Where error is shown injury is presumed unless the contrary affirmatively appear. State v. Security, 2 S. D. 538; 51

N. W. 338; Fuller v. Elevator Co., 50 N. W. 354. Error of law occurring at the trial can be reviewed on appeal whether or not a motion for a new trial was made in the court below. Lumber Co. v. Baker, 50 N. W. 718.

*Horner & Stewart,* for respondent.

Actual family residence is necessary to constitute a homestead. Carry v. Tice, 6 Cal. 626; Rix v. McHenry, 7 Cal. 89; Benedict v. Bunnell, 7 Cal. 246; Campbell v. Adair, 45 Miss. 178; Austin v. Stanley, 46 N. H. 52; Spaulding v. Crane, 46 Vt. 296; Thompson Homestead, §§ 70, 92, 258; Stanton v. Hitchcock, 31 N. W. 395. As a general rule the domicile of the husband is to be regarded as the domicile of the wife but to this rule there are exceptions. Meyers v. Clane, 15 Tex. 516; Stuart v. His Creditors, 12 La. Am. 91.

A divorced husband or wife can testify without the others consent either for or against the other, except as to confidential communications made by the one to the other during coverture. 1 Green. Ev. 338; Stewart Marr. & Divorce, § 439; Parcell v. McReynolds, 33 N. W. 139; Robinson v. Talmadge, 97 Mass. 175; Wharton's Civ. Ev. § 427; State v. Dudley, 7 Wis. 664; Cook v. Henry, 25 Wis. 569; Walback v. Freeman, 71 N. Y. 601; Richard v. Burdel, 31 Iowa 310.

KELLAM, J. This action was brought to foreclose a mortgage executed by Sharon G. Evans, the husband of appellant, upon real estate in the city of Pierre. Jennie Evans, the wife, defends upon the ground that when the mortgage was executed the premises mortgaged constituted the homestead of defendants; that she was a resident of the territory of Dakota, and did not sign or in any manner consent to the mortgage. Upon trial by the court, plaintiff had judgment of foreclosure, and Jennie Evans appeals.

Two questions are presented: Did the mortgaged premises constitute the homestead of defendants? and, if so, were both husband and wife residents of the territory, so as to make their

joint execution of the mortgage essential to its validity under section 2451, Comp. Laws, which declares that "a conveyance or incumbrance by the owner of such homestead shall be of no validity unless the husband and wife, if the owner is married and both husband and wife are residents of the territory, concur in and sign the same joint instrument"? In 1884 the lot in question was vacant, and owned jointly by defendant Sharon G. Evans and one Sharpe. Evans came to Pierre in 1880, leaving his family, consisting of a wife and daughter, in Ohio. In the fall of 1883 Evans and Sharpe excavated for the cellar and laid the foundation walls for a double business building upon this lot, and during the ensuing summer and fall completed the same. When the building was sufficiently advanced towards completion, in the summer of 1884, Evans, the husband, occupied a room on the second floor, paying rent therefor to the joint owners, using the room as an office and sleeping room, or, as expressed by some of the witnesses, a "living room," taking his meals at an hotel or restaurant. Prior to that time he had occupied a room in the Hilger Block for similar purposes. In November, 1884, Evans left Pierre, and went to Spokane, Washington territory, where he remained during the ensuing winter, returning to Pierre in April, 1885. He remained in Pierre until late in the summer, occupying a room in said building in substantially the manner already described. In August, of that summer he removed to Rapid City, Dak. As to the foregoing facts there is so little dispute that we consider them fairly proved as stated, and it is probably true that he was so occupying a room in this building when the mortgage was executed upon which this action is brought. During the time Evans was in Pierre, his wife and daughter came to him upon at least two occasions, but remained but a short time. Mrs. Evans testifies that her going away was not voluntary, but that she was coerced by her husband. While they were in Pierre they did not occupy any part of this building, but were at an hotel. At this point it seems proper to notice the fact,

disclosed by the evidence, that in May, 1886, the defendants were divorced by a judgment of the circuit court of Hughes county, Dak., for this fact may explain the obvious lack of unity in interest and sympathy between the defendents in the effort of defendant Jennie Evans to maintain the homestead character of these premises, and thus defeat the mortgage.

These are all the facts as to the actual occupancy of these premises, or their user as a home, by either Sharon G. Evans or his wife or family. It might be admitted, as we suspect from the evidence the fact is, that Evans did not want his wife to remain in Pierre, or even that he unjustifiably sent her away; that fact, however undutiful or wrong, or even cruel, it might have been, could not change the character of his separate occupation of this room, nor supply, nor take the place of, nor excuse, the affirmative facts necessary to impress upon it the character of a home or homestead. He testified that in the occupation of this room he did not use or occupy or claim it as a home either for himself or his family. He further testifies, that when he left Pierre in November, 1884, he went for the purpose of taking up his residence in Washington territory, and did so. It also appears that in 1884, and while Evans was so occupying the room in question, he was acting as one of the county commissioners, to which office he had been elected the fall before, and that the district which he represented, and of which, as such commissioner, he was required to be a resident, did not include the building in which appellant claims her husband's home to have been. His evidence, both as to the use of the room and his purpose in leaving Pierre, and the county records showing his holding of such office and the boundaries of his district, were objected to on the ground that they were "not binding upon the defendant Jennie Evans," and were not competent. He had an undoubted right to make his home in this building, or not, as he chose, and he had a right to change his residence from Dakota to Washington. Whether he did either in fact depended largely upon his intention and purpose,

as to which he was competent to testify. Appellant cites Jacobs v. Hawkins, 63 Tex. 1, as an authority that such evidence of Evans was incompetent against the wife. In that case the court says: ''The fact of homestead or not could not be determined by any declaration of opinion made by J. W. Hawkins (the husband) as a witness, and the court did not err in excluding the answer to a question which called for such opinion. * * * The declaration of Hawkins as to the character of the property secured by the mortgage was properly excluded; for if, in fact, the property was a homestead, the mere declaration of the husband to the contrary could not make it that which it was not in fact. In cases in which property has not been used as a Homestead, or is not so used, the declarations of a husband would seem to be admissible for the purpose of showing that there was no intention so to use it as to make it the homestead.'' This is in direct line with our own thought upon the subject. If Evans' use and occupation of these premises were such as to prove them to be his home, his declaration that they were not would not prevail against evidence of such use and occupation. But here the very vital question is, did he so use it? What was the character of his use and occupation? Simply sleeping in the room for a few weeks or months would not alone make such room the home or homestead contemplated by the statute. Such occupation might have been and intended to be transient and for temporary convenience. It is the use with intent, or the use and intent combined, which impress the homestead stamp upon real estate. Wap. Homest. 190. As the leaving of homestead premises is an abandonment or not, according to intent, so going upon and occupying makes a homestead or not, according to intent. Leonard v. Ingraham, 58 Iowa 406, 10 N. W. 804. His testimony as to his purpose and intent might not and should not prevail against inconsistent overt acts, but it was not incompetent. It was entitled to be considered for what it was worth, in connection with the other facts and circumstances of the case. Hulett v. Hulett, 37 Vt. 581;

Fisk v. Chester, 8 Gray 506; Kennedy y. Ryall, 67 N. Y. 380;
Bidinger v. Bishop, 76 Ind. 245.    We think, too, the county
records were  properly  admitted  to  show  the fact that Evans
was  a  commissioner  for  a  district  which did not include the
place which appellant claimed  was  his  residence.    The ques-
tion was, where was his residence?    And  any  fact proved in a
competent way that tended  to  throw  light upon this point was
admissible.    It  would  have  been  competent, as  bearing upon
the question of his residence, to  show  where  he  voted.    Abb.
Tr. Ev. 108, and cases cited.    Why not, then, to show where he
held  office?    Respondent  insists  that  such  evidence was not
pertinent,  because  he  was not so  serving when the mortgage
was given; that in 1884, when  so  serving, his  residence might
have been in the Second district, which  he represented, while
in 1885, when the mortgage was  given,  it  might have been in
the First; but the evidence all  tends  to  show that after he re-
turned to Pierre in April, 1885, his  use  and  occupation  of  a
room  in  this  building was  just the  same  as  it  had  been  in
1884.    If the evidence proves that he lived and had his home in
this  building  in 1885, it  shows that  he  had  it there in 1884,
and vice versa.    The concurrence of  both  his  neighbors and
himself in his holding of  the  office of commissioner, while not
conclusive as to the place of  his  residence, is a fact tending to
show that neither he nor they considered his residence or home
to be upon these premises, for in such case he would have been
inelligible.

    So far as the objection  to  Evans'  evidence  rests  on  the
ground  that the relation of the parties as former husband and
wife made him an incompetent witness against her,  the answer
must be that, whatever may be  the  rule  at  common  law,  our
statute  seems  to  cover  the  ground and settle the question in
favor  of the competency of the witness to testify to such facts
as we allow ourselves to consider, to wit, his own  purpose and
conduct  in  occupying  the premises in question and in remov-
ing from Dakota to Washington.    Section 5260, Comp. Laws,

after declaring generally that no person shall be excluded as a witness because a party to or interested in the event of the action, or because the husband or wife of one so a party or in-terested, qualifies such declaration as follows: "A husband cannot be examined for or against his wife, without her consent; nor a wife for or against her husband without his consent nor can either during the marriage or afterwards be, without the consent of the other, examined as to any communication made by one to the other during the marriage." The plain declaration is that while the relation of husband and wife exists neither can testify for or against the other, except by consent; after such relation is terminated, and the parties are no longer husband and wife, neither can, without the consent of the other, testify to communications made between them while such relation existed. When offered as a witness, Sharon G. Evans was not the husband of Jennie Evans, nor did he testify so far as we make any use of his evidence, to communications between them, but simply to what he himself did, and the purpose for which he did it; and as to these matters, and to this extent, we think he was a competent witness. We therefore do not believe it is necessary to a decision of this case to discuss or pass upon other questions ably discussed by counsel, such as the proper construction of our homestead exemption law, and the necessity for actual residence upon the premises by the wife in order to invest her with homestead rights therein. Up to the time of giving the mortgage, Jennie Evans, the wife, never actually occupied this property, either as a homestead or otherwise. If as a wife she has homestead rights therein, it is solely because her husband so used and occupied it as to make it a homestead. If it never became his homestead, it never became hers. Her rights are built entirely upon his occupation. The pivotal question, then, is this: Will the occupation by a husband, whose family is in another state, of a room, as a office and sleeping or living room, in a business block belonging jointly to himself and another, for which room he pays rent to

the owners, and which he swears he never used or claimed as his home, he during such occupancy accepting and serving in an office in which he is ineligible if domiciled in this building, constitute such premises his exempt homestead? To hold affirmatively would require the court to assume either that Evans did not know. his purpose in occupying this room, or that he deliberately misstated it in his evidence, when no facts are shown which are postively inconsistent either with the intelligence or truthtulness of his statements. The cases cited by appellant's counsel to show that it was not necessary for the wife to actually reside upon premises claimed as a homestead differ from this in the important respect that in those cases the husband's home was conceded to have been established thereon, and his residence was imputed to her. Here the foundation fact—that of the husband's residence on the premises as a home—is not only not conceded, nor clearly established, but, in our opinion, the evidence preponderates against it. Under these circumstances there is nothing tangible for the wife's homestead claim to rest upon. It may be that Evans ought somewhere to have established a home for himself and family. There is, however, no law requiring the head of a family to so do; but the question is not, what ought he to have done? but, what did he do?

Upon the trial below the court found as a fact that prior to the making of this mortgage Sharon G. Evans never resided upon this property, and that at the time of making the same he did not so reside thereon. While under the statute, in a case like this, it becomes the duty of this court to review the evidence, the rule is that the finding of the trial court stands unless the evidence clearly preponderates against it. We do not think it does. It is quite possible that upon the trial some evidence was admitted that should not have been. These questions we do not discuss, for in reviewing this case we have only considered such testimony as we regarded competent, and we base our conclusions thereon. Our judgment being that the

mortgaged premises were never impressed with the stamp of a
homestead, so as to make it requisite that the wife sign the
mortgage, it is not necessary to pursue the second question, as
to whether the wife was at the time of the execution of the
mortgage a resident of Dakota.    The judgment of the circuit
court is affirmed.

FULLER, J., took no part in the decision of this case.