## The Chicago, Burlington & Quincy R'y Co. v. The Burlington & Mississippi Elevator Co.

1. **Lease:** ACTION FOR RENT: PLEADING. Action upon a contract for the rent of an elevator. The contract provided that certain payments should be made out of the gross receipts of the elevator before any rent should be payable, and the petition did not allege that anything was left of the gross receipts after making such payments. *Held* that the petition was bad on demurrer.

*Appeal from Des Moines District Court*—HON. CHARLES H. PHELPS, Judge.

WEDNESDAY, DECEMBER 21.

ACTION to recover upon a contract for rent of land reserved therein. A demurrer to the petition was sustained. From this ruling plaintiff appeals.

*J. W. Blythe* and *Thomas Hedge, Jr.*, for appellant.

*Newman & Blake*, for appellee.

BECK, J.—I. The contract upon which the action is based was entered into between plaintiff and Benjamin D. Brown.

The petition alleges that defendant became bound to perform the covenants of the contract assumed by Brown. It is alleged that certain rent is due plaintiff under the contract, to recover which this action is brought.

It becomes necessary, for a proper understanding of the case, to state with sufficient particularity some of the covenants therein, and to quote all others. The lease is divided into sections, numbered consecutively, which affords a convenient means of referring to the covenants of the respective parties: (1) The plaintiff leases to Brown, for the rent reserved in the contract, certain land in the city of Burlington, particularly described, for the term of eighteen years. (2) Brown agrees to build thereon an elevator, of the capacity of 400,000 bushels of grain, to be constructed in the manner and according to plans specified. (3) The third section prescribes the charges to be made for handling grain. (4) Brown agrees to handle promptly all grain brought to the elevator by plaintiff, who is obliged to switch cars bringing the grain with reasonable dispatch. (5) Grain brought to the elevator is to be shipped therefrom by plaintiff's road, unless it be found expedient to ship by the river. (6) The plaintiff, any time after two years, shall have the right to purchase the elevator and the machinery therein, " paying therefor a sum which shall not exceed its value as a structure merely, and in ascertaining such value no account shall be taken of its commercial value, nor any other element of value it may have, except as a mere structure." The method of ascertaining the value, and other matters, are prescribed, which need not be more particularly referred to here. (7) In case Brown or his successors wish to dispose of the elevator, it shall be first offered to plaintiff. (8) Sections 8 and 9 are in the following language: " Sec. 8. The said second party further agrees to keep accurate books of account of the business transacted by him, which shall at all times be open to the inspection of the vice-president of the first party, or any person duly authorized by him. Such books of account shall

show the annual net profits accruing to said second party from the operation of said elevator, which net profits shall be determined as follows, to-wit: From the gross receipts of said elevator business there shall be deducted—*First*, all current operating expenses, including reasonable salaries of officers and men employed by said second party, and daily occurring repairs: *second*, all taxes and insurance paid by said second party upon the building and leased premises and appurtenances; *third*, a salary of two thousand five hundred dollars ($2,500) per annum to the manager of the said elevator; *fourth*, all general or extraordinary repairs on the elevator building or tracks therein, and on the premises hereby leased, and tracks and other appurtenances thereon; *fifth*, six per cent interest per annum on the amount herein fixed as the value of the premises, and the tracks thereon hereby leased to said second party, and also six per cent interest per annum upon the cost of any additional tracks or improvements made by said first party for elevator purposes on the said demised premises, which interest shall be paid to the first party yearly as rentals; *sixth*, six per cent interest per annum on the cost of the elevator and appurtenances, and upon the cost of all extensions and enlargements of the same, which interest shall be paid to the second party yearly. The balance of the gross receipts remaining after the above payments have been made shall be divided between the first and second parties as follows: The second party shall retain ten thousand dollars, if said balances shall amount to that sum during any year; if it does not amount to that sum during any year, then the said second party is to retain all of the said balance. All of said balance above ten thousand dollars, and up to twenty thousand dollars, each year, shall be paid to the first party. All of said balance above twenty thousand dollars earned in any year shall be divided equally between the first and second parties. Sec. 9. All of the foregoing payments of said first party, on account of the said balance, shall be. additional rental for the premises herein described." (10)

The plaintiff agrees that, so far as it may legally do so, it will give the other party preference of all grain controlled by it, and will give as good rates before shipments as are given to any other parties under similar conditions and circumstances. (11) Section 11 prescribes the charges to be made by plaintiff for switching. Other stipulations of the contract need not be recited.

The petition does not aver that, after the payments provided for in paragraphs 1, 2, 3 and 4 of the eighth section, any sum remained in the hands of the defendant. The demurrer is based upon the ground that, under the contract, plaintiff is entitled to receive and recover nothing unless a balance remains in the hands of defendant after the payments required by these paragraphs are made, and, as no such balance is shown or averred, the petition fails to present a cause of action against defendant.

II. In our opinion, the demurrer was rightly sustained. The language and form of the contract unmistakably indicate the purposes of the payments to be made out of the earnings of the elevator, and their order. Those contemplated in paragraphs 1, 2, 3 and 4 of section 8 are to be made before those provided for in the following paragraphs. The order of enumeration of these payments settles their order of priority. The reason of these provisions of the contract is quite plain. The defendant depended largely, if not wholly, upon the business brought to it by plaintiff for its income, and the plaintiff became bound by the agreement to furnish defendant all the grain transported to Burlington over its road. A failure to perform this obligation would largely diminish the income of defendant. The elevator could not be operated successfully unless the expenses contemplated in the paragraph above referred to were first paid out of its earnings. The plaintiff, by the terms of the contract, became interested in the successful prosecution of the business done at the elevator. These considerations, doubtless, induced the provisions requiring expenses of operating it to be first paid out

of its earnings, and support the construction we give to the contract.

III.  Counsel for the plaintiff insist that, as the payments to be made to it under the contract were in fact rent, and were so denominated in the instrument, the law will presume defendant's obligation to pay it, but no such presumption will arise against the language and the plain interpretation of the contract.  It is entirely competent for a landlord to stipulate that the rent he receives shall be contingent upon the income of the tenant from the demised premises.  The leasing of farm lands upon the shares, or for cash rent, to be determined by the quantity of grain raised, and sometimes by its price, is a common way of renting, under which the rent to be received by the landlord is contingent upon the success of the tenant in raising crops.  Leasing of land in this way is somewhat like the contract of the parties sought to be enforced in this action.

In our opinion, the judgment of the district court ought to be                                AFFIRMED.