WARNER, Appellant, v. HOPKINS et al., Respondent.

(176 N. W. 746.)

(File No. 4631.   Opinion filed March 2, 1920.)

1.  **Homestead—Nonresidence After Final Proof, Intention to Return, Whether Homestead Abandoned—No Execution Lien.**

   Plaintiff, a single woman, while residing on land as a gov- ernment homestead, constructed a small house, barn, and cave, the house having a brick chimney, and furnished with bed, table, chairs, stove and cooking untensils; about twenty acres of the land was broken and cultivated while she lived thereon, about 100 acres being fenced and rented as pasture.   She was without property or means other than her earnings acquired during such residence at P about eighteen miles distant; after final proof she worked at P for about six years, going to see the land about once a month, at times staying over night in the dwelling house, after which she went to a distant part of the state to obtain employment for about a year and a half, and not again visiting the land; her testimony being that she did not continue living thereon because she could not make a liv- ing there, that she had no money or property to pay expenses except her earnings, that at all times since final proof she had intended to return, considering the claim her home, that such was still her intention as soon as her finances would permit, that she claimed the land as her homestead and that it was exempt from execution, that after proof she rented part of the land but never leased the house, did not move away her goods and furniture, that she did not know what shape the house is now in; defendant's witness testifying to his acquaintance with the land for several years, that the barn was now gone, that the house windows broken, the foundation giving way in places, etc., that he had not notified plaintiff of damage to the place, not deeming it sufficient to notify her; plaintiff in re- buttal testifying she never had heard of any damage to the place.   **Held**, that a finding that plaintiff never since leaving the land showed intention by act or conduct of ever returning to the land as her home, more than her statement on trial that

she intended to return, etc., nor by any statements then as to how long she would be absent and when for certain she would return, and that her actions indicated her abandonment of the land—were unsupported by evidence; and judgment decreeing defendant's execution judgment a lien against the land is reversed.

2. **Same—Duration of by Occupancy—Abandonment, Removal With Intention to Abandon, As Essentials To.**

Protection to a homestead awarded by the constitution and statutory provisions, lasts no longer than occupancy as a homestead; while question whether claimant has abandoned it is mainly one of intent, depending upon peculiar facts of each case; a general essential requisite of abandonment being that there must be actual relinquishment of possession and removal therefrom, coupled with intention to abandon use of property as a homestead, or an intention to remain away, formed after such removal.

3. **Same—Whether Continuous Occupancy Necessary—Temporary Absence, Whether Working Forfeiture—Departure for Pleasure, Business, Health, Effect.**

Where a home, residence or settlement has been acquired on land, continuous actual occupany is not necessary to secure exemption from forced sale; and absence temporary in nature and not designed as abandonment will not work forfeiture; nor does departure therefrom for pleasure, business or health constitute abandonment, unless design of permanent abandonment be apparent.

4. **Homestead—Acquisition of New, As Abandonment of Former—Long Absence, Whether Conclusiveness of Abandonment.**

The acquisition of a new homestead elsewhere is conclusive proof of abandonment of former homestead; but long duration of absence is not, in itself, conclusive of fact of abandonment.

5. **Evidence—Homestead, Declarations of Occupant, When Admissible to Prove Abandonment.**

Declarations by occupant, if made at or before time of removal from homestead, are admissible to prove fact of abandonment, particularly if made in disparagement of the right and when claimant was in actual occupany.

6. **Homestead—Abandonment—Occupancy Finding of Non-intention to Return, Ignoring Declarations Re—Findings Unsustained.**

Where finding of trial court concerning plaintiff's claim of homestead, is substantially founded upon fact that the evidence shows no declarations made before leaving her homestead, that she intended to return, and that "her whole actions and demeanor indicated that, when she left the land, she abandoned it," **held**, the "actions and demeanor" referred to ignored her

undisputed testimony as to her condition, her inability to earn a living on the land, and the necessity of obtaining work elsewhere for her support, also her declaration that she never intended to abandon it and always intended to return thereto; and the findings clearly misconceive the probative force and effect of her whole evidence, being against its clear preponderance.

7. **Same—Intent to Return, Abandonment, Declarations as Evidence Re, Absence of Declaration, Effect.**

Declarations disclosing intent to abandon a homestead' are competent evidence of abandonment, but absence of declaration tending to show abandonment is not evidence of intent to return to the homestead, nor is absence of declarations tending to show intent to return, evidence of intent not to return.

8. **Evidence—Motive, Intent of Act, Materiality of Motive as Recognizing Act.**

The test of admissibility of evidence of the motive or intent with which an act is done, is the materiality of the motive or intent in giving character to the act.

9. **Homestead—Abandonment, Claimant's Testimony to Disprove.**

Intention to abandon land as a homestead is a fact disprovable by claimant's testimony.

1.0 **Same—Clear Proof to Authorize Finding of Relinquishment—Indefinite Absence, Necessity of Non-intent to Return—Declarations as Evidence of Intent.**

Intention to abandon a homestead must be clearly proven before jury is authorized to find relinquishment of homestead rights, which intent should be proven by best accessible evidence; and that one has absented himself indefinitely is · insufficient to establish abandonment, but such fact must be accompanied with further proof of intent not to return; depending largely upon circumstance and facts; his declarations before, at time of and after leaving home are admissible to establish intent.

Appeal from Circuit Court, Lyman County. Hon. WILLIAM WILLIAMSON, Judge.

Action by Alvena Warner, against D. E. Hopkins and others, to enjoin execution sale against plaintiff's land claimed as her homestead. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

*Berdahl, Waggoner & Stordahl,* for Appellant.
*Frank C. Wederath,* for Respondent.

(1) To point one of the opinion, 'Appellant cited: McDermott v. Kernan (Wis.), 39 N. W. 537; Shireland v. Union

National Bank (Ia.), 21 N. W. 200; Zwick v. Johns (Ia.), 56 N. W. 665.

Respondent cited: Newman, Trustee, v. Franklin et al., 28 N. W. 579.

SMITH, J. One Hopkins, assignee of a judgment against plaintiff, caused an execution to be issued and levied upon a quarter section of land in Lyman county, owned by plaintiff. Plaintiff claims this land as a homestead, and brings this action to enjoin the execution sale. It is undisputed that plaintiff homesteaded the land and received patent from the government in the year 1912. During her residence upon the land as a government homestead, she constructed a small house and barn and a cave. The house had a brick chimney and was furnished with bed, table, chairs, stove and cooking utensils used by her during her residence on the land. She had about 20 acres of the land broken and cultivated while she lived on the homestead. About 100 acres were fenced and rented as a pasture. It is conceded that plaintiff at all times was a single woman, without property or means, except such as she earned by her own labor (during her residence on the land) by housecleaning and dressmaking at Presho, a town about 18 miles distant from the land. After making final proof, she worked in a millinery store at Presho for something like six years, but during that time went out to see the land as often as once a month and at times stayed overnight there in the dwelling house. After that she went to Sioux Falls and obtained employment for about a year and a half, during which time she did not visit the land. At the trial she testified that she did not remain continuously on the land because she could not make a living there, and her financial condition made it necessary for her to secure employment; that she had no money or property with which to pay her necessary expenses except what she worked for; that she left Presho and went to Sioux Falls because she could earn more money there than at Presho. She further testified that—

"During all the time since I made my final proof it has been my intention to return to the claim, and during all this time I have considered said claim my home, and it has been and is my intention to return to it as soon as my financial con-

ditions are such that I can.  I have no other home.  I own no other house or real estate.  The value of the land is about $2,500, and I claim it as my homestead, and that it was exempt for that reason.  For a while after making final proof I rented part of the land for pasture to one Rassman, to whom I rented it by the year up until this year.  I had at no time leased the house on the farm. * * * When I made final proof on the land I did not move away the household goods and furniture that was in the house.  It was left there, * * * and when I left Presho for Sioux Falls I left the household goods and furniture in the house, and have never moved it from the place, nor authorized any one else to remove it. * * * All of that furniture was there when I left, about two years ago.  I have not been on the place since that time, and I do not know whether the furniture is there or not.  I do not know what shape the house is in since I left.  I have not seen the house for about two years, nor slept in it, nor been on the premises during that time."

The defendant offered the testimony of a single witness, who testified that he was acquainted with the land and had known of it since the first of March, 1918; that there is a house on it; that the barn is gone at the present time; that the house looks all right from the outside, but windows are broken out; that the foundation has given way in some places; that the house is not standing level and the floor is sagged; that the house has a brick chimney, and that he has never seen anybody occupying the house; that he did not live out there when plaintiff did, and never met her until that morning; that he did not notify her that any damage had been done to her place—did not think the damage sufficient to notify her. Plaintiff, in rebuttal, testified that she had never heard of any damage of any kind that had been done to the place.  It is conceded that the house was never occupied by any person except plaintiff.

The foregoing statements embrace in substance all the material evidence offered at the trial.  The trial court made findings of fact in substantial conformity to the foregoing facts, and added thereto:

"The plaintiff, ever since leaving said premises, has in

no particular shown any intentions by her acts and conduct of ever returning to the land to make it a home, nothing more than her own statement upon the trial that she has intended some time to return to said land to live. She never manifested any such intention at the time she first left the land and removed from it, neither by any statements then of her own as to how long she would be absent, and when for certain she would return, and her whole actions and demeanor indicate that when she left the land she abandoned it, and her declarations that she intended to make this some time her home were first made after execution and levy."

The court thereupon entered conclusions of law and judgment decreeing defendants' judgment to be a lien against the land, and directing a sale in satisfaction thereof. Plaintiff appeals.

[1-3]   The question decisive of this appeal is whether the evidence is sufficient to sustain the finding and conclusion of the trial court that plaintiff had abandoned her homestead. The rule as to abandonment sustained by the great weight of authority is thus stated in 13 R. C. L. 647, § 108:

"The protection to a homestead afforded by the constitutional and statutory provisions lasts no longer than the occupancy of the premises as a homestead. But, the question of whether a homestead claimant has abandoned his homestead being mainly one of intent, no general rule of universal application can be enunciated, and the question whether an abandonment has taken place must depend upon the peculiar facts of each case. It is, however, generally recognized as an essential requisite of an abandonment of a homestead that there must be an actual relinquishment of possession of the premises and removal therefrom, coupled with an intention to abandon the use of the property as a homestead, or an intention to remain away, formed after such removal."

Id. 648, § 109:

"It is a well-established rule that, where a home, residence, or settlement has once been acquired on lands, it is not necessary that there should be continuous, actual occupation to secure the homestead from forced sale, and that an absence temporary in its nature, and not designed as an abandonment, will not

work a forfeiture of the right. A departure from the homestead for pleasure, business or health does not constitute an abandonment thereof, unless it be apparent that there is a design of permanent abandonment."

[4, 5] This court has held that the acquisition of a new homestead elsewhere is conclusive proof of abandonment of the former homestead. Somers v. Somers. 27 S. D. 500, 131 N. W. 1091, 36 L. R. A. (N. S.) 1024. The long duration of absence is not, in itself, conclusive of the fact of abandonment. Boot v. Brewster, 75 Iowa, 631, 36 N. W. 649, 9 Am. St. Rep. 515, and note.

"Declarations made by the occupant, especially if made at or before the time of removal from the homestead, are admissible in evidence to prove the fact of abandonment, particularly if such declarations are made in disparagement of the right, and at a time when the claimant was in actual occupation of the premises." 13 R. C. L. 656, § 114.

[6-8] The statement of the trial court in its finding of fact upon which the ultimate conclusion of abandonment seems to be predicated is that plaintiff—

"never manifested any such intention [to return] at the time she first left the land and removed from it, neither by any *statements then of her own as to how long she would be absent,* and when for certain she would return, and her whole actions and demeanor indicate that when she left the land she abandoned it, and her declarations that she intended to make this some time her home were first made after execution and levy."

This finding appears to be founded almost wholly upon the fact that the evidence does not show any declarations, made before leaving her homestead, that she intended to return, and that "her whole actions and demeanor indicate that when she left the land she abandoned it." Certainly the "actions and demeanor" to which the trial court refers could have been none other than the acts and demeanor disclosed by the evidence. Apparently the court absolutely ignored her undisputed testimony as to her financial condition, of her inability to earn a living on the land, and the necessity of obtaining work elsewhere for her support, as well as her positive declaration that

she never intended to abandon her homestead, and always intended to return to it, and this simply for the reason that the evidence failed to show that she had made no declarations of her intention to return previous to the time she left the homestead. The trial court seems to have considered the absence of proof of declarations showing an intent to return as decisive against her sworn testimony that she always intended to return to make her home· on the land. Declarations disclosing an intent to abandon the homestead would certainly have been competent evidence. But the absence of declarations tending to show abandonment is not evidence of an intent to return to the homestead nor is the absence of declarations tending to show an intent to return evidence of an intent *not* to return.

"The test of the admissibility of the evidence of motive or intent [with which an act is done] is the materiality of the motive or intent in giving character to the act." State v. King, 86 N. C. 603; Clark v. Evans, 6 S. D. 244, 60 N. W. 862.

[9] An intention to abandon land as a homestead is a fact which may be disproved by the testimony of the party claiming the homestead. Glasscock v. Stringer (Tex. Civ. App.), 32 S. W. 920; Aultman v. Allen, 12 Tex. Civ. App. 227, 33 S. W. 679; Gunn v. Wynne (Tex. Civ. App.), 43 S. W. 290. See generally, Los Angeles v. McCollum, 156 Cal. 148, 103 Pac. 914, 23 L. R. A. (N. S.) 378, and extensive note. In McMillan v. Warner, 38 Tex. 415, the court said:

"But the intent to abandon must be clearly established by proof before a jury would be authorized to find a relinquishment of any rights under the homestead laws, and that intent should be proven by the best accessible evidence. That a party has left his home and been absent for an indefinite period would of itself be no sufficient evidence to establish the fact of abandonment, but such fact must be accompanied with the further proof of the intent not to return. How that intent is to be established must depend to a great extent upon the circumstances and facts surrounding each case. The declarations of a party before, at the time· of, and after leaving his home may be given in evidence to establish the intent."

The context, however, suggests that the declarations re-

ferred to in that case were such as might tend to prove an intent to abandon.

We are not unmindful of the many decisions of this court holding that findings of fact by a trial court will not be disturbed, unless against the clear preponderance of the evidence; but we are of the view that the error in this vital finding of fact shows a clear misconception of the probative force and effect of the whole evidence, and is against the clear preponderance of the testimony.

The judgment and order of the trial court are reversed, and the case remanded for a new trial.