FITZPATRICK, Appellant, v. TOBIASSEN, et al, Respondents.

(227 N. W. 882.)

(File No. 6574. Opinion filed December 10, 1929.)

*Danforth & Barron,* of Sioux Falls, and *Amos N. Goodman,* of Aberdeen, for Appellant.

*F. J. Carpenter* and *M. L. Parish,* both of Murdo, and *M. Q. Sharpe,* of Kennebec, for Respondents.

MISER, C. On May 6, 1921, J. L. Fitzpatrick, father of Leo Fitzpatrick, appellant herein, contracted to purchase two lots in Draper from Milwaukee Land Company, the owner. On November 17, 1922, before making final payment which would have entitled him to a deed, J. L. made a written contract to convey these lots to respondent A. H. Tobiassen by deed transferring merchantable title. This contract contained a condition that, if such a deed

could not be delivered, the contract was to be void. Although this contract provided that conveyance should be to A. H. Tobiassen, the consideration therefor was the amount owed by J. L. to him and to respondents J. B. Tobiassen and Ecker and to defendants Anderson Lumber Company and Milwaukee Land Company. On March 2, 1923, Mr. Parish, the attorney for Tobiassen, sent to Leo, who is an attorney, a warranty deed signed by J. L. and naming Tobiassen as grantee, with the request that he have his mother, Mary, sign the same and return. The letter in which the deed was forwarded to Leo stated that Tobiassen was requiring her signature under the terms of a separation agreement made in October, 1915, between J. L. and Mary. By this separation agreement, each party had agreed to execute such deeds as might be necessary to make a valid conveyance of the property of the other. Mary refused to sign this deed; and Leo returned it to Parish with a letter so stating. About March 28, 1923, Parish showed Leo the contract in which J. L. agreed to deed to Tobiassen, and informed him of the agreement between J. L. and respondents. Later, Parish was told by J. L. and Leo that Leo had taken an assignment of the contract between the land company and J. L., and that Leo and J. L. had made a contract by which Leo agreed to pay the claims of respondents and the Anderson Lumber Company account and the balance due the land company, and that the balance received by Leo from the sale of the property should be given to his mother, Mary. After securing an assignment from J. L. of the contract, Leo paid Milwaukee Land Company the balance due and took deed in his own name. Thereafter, respondents demanded that Leo pay the debts which he had assumed and agreed to pay, and he refused to pay them. In August, 1923, respondents took judgment against J. L. on their claims. Execution was levied against the lots theretofore deeded to Leo. On sale thereof under execution, they were bought by respondents, and sheriff's certificates issued to respondents. On October 6, 1923, Leo brought the present suit against respondents to quiet title. After this suit was begun but long before trial, a sheriff's deed was issued to respondent Eckner on his certificate of sale obtained on the sale of the lots under the judgment of Eckner against J. L.

On trial in March, 1926, there was a very marked conflict in the oral testimony, partially summarized above. Because the court

is of the opinion that judgment must be reversed, in making the above partial statement of the facts, the conflict, for the purpose of this opinion, has been resolved against appellant. At the opening of the trial, Mr. Parish appeared as one of the counsel for respondents, but, before the taking of testimony, by reason of being a material witness, he withdrew as counsel, and in his stead Mr. Sharpe appeared. After making findings of fact in substantial accordance with the foregoing, though covering many additional facts, some of which are hereafter noted, judgment was entered giving respondents a lien on the property for the amounts of their claims against J. L. Fitzpatrick.

The trial court found that J. L. had built a house on this lot after contracting to purchase it; that J. L. and Mary lived in the house, and that during such time it was their homestead; that later J. L. moved to Murdo and Mary moved to Aberdeen and took up her residence with Leo, appellant herein; that each thereby abandoned the lots as a homestead; that, after such abandonment, J. L. executed and delivered the contract for deed to A. H. Tobiassen. Yet, during the trial, when appellant offered to prove that these lots were the homestead of Mary from the time J. L. contracted to purchase them until this contract was assigned, leave to so prove was denied.

If respondent's interest in the premises is based on the contract for deed between J. L. and Tobiassen dated November 17, 1922, and if Mary then had a homestead interest in the premises, such contract would not be valid without her signature. Section 451, Rev. Code 1919. If respondent's interest is predicated upon the conveyance to Leo being in fraud of creditors and if, at the time of such conveyance, the property was a homestead, respondent's interest in the property would fail because the homestead property was worth less than $5,000. Peck v. Peck, 51 S. D. 157, 212 N. W. 872. Therefore, the denial of leave to prove by Mary the homestead character of the property was prejudicial error. Warner v. Hopkins, 42 S. D. 613, 176 N. W. 746.

Various questions are raised by other assignments of error. No useful purpose would be served by their discussion herein. Without assuming facts contrary to the findings of the trial court, appellant is not entitled to a directed verdict. If these premises had lost their homestead character prior to the contract

with and deed to Tobiassen, and Leo bought with full knowledge of such transfer, he took title subject thereto. Whether, if the sole consideration—as the trial court found—for the assignment by J. L. to Leo was Leo's promise to pay J. L.'s debt to respondents, Leo can come into a court of equity and obtain a decree quieting title in himself after failing to keep the promise which induced the transfer is an interesting question. Until the trial court determines, without excluding material evidence, all the material facts of this case, the rights of the parties to this suit cannot be fully determined. Therefore, the judgment and order appealed from are reversed, and the case remanded for a new trial.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.