STATE of North Dakota, Respondent,

v.

Ernest Oliver MOE, Defendant and Appellant.

Cr. 353.

Supreme Court of North Dakota.

June 2, 1967.

Ella Van Berkom, Minot, for appellant.

Ray H. Walton, State's Atty., Williston, for respondent during trial in County Court with Increased Jurisdiction.

LeRoy P. Anseth, State's Atty., Williston, for respondent on appeal.

ERICKSTAD, Judge.

The defendant, Ernest Oliver Moe, appeals to this court from a judgment of conviction made and entered on October 26, 1966, in the County Court with Increased

Jurisdiction of Williams County. The judgment was based on a jury verdict which found Mr. Moe guilty of the crime of resisting an officer in the performance of his duty.

The pertinent part of the criminal complaint reads as follows:

> Arnold Schimke, being first duly sworn, says that on the 16th day of May, A.D., 1966, near Tioga in said County, the above-named Defendant did commit the crime of Resisting an Officer (12–08–21 NDCC) committed as follows, to-wit: That the Said Defendant, Ernest Oliver Moe, did by the use of force and violence, knowingly resist an executive officer, to-wit: Arnold Schimke, Sergeant of the North Dakota Highway Patrol of Williston, North Dakota, in the performance of his duty. * * *

 This being a jury case, to determine whether the evidence was sufficient to support the verdict we must view the evidence in the light most favorable to the verdict. State v. Loyland, 149 N.W.2d 713 (N.D.1967); State v. Carroll, 123 N.W.2d 659 (N.D.1963); Christianson v. United States, 226 F.2d 646 (8th Cir. 1955), cert. denied 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859.

Considering the evidence in that light, we believe that the jury could reasonably have found that the facts were as follows:

The complaining witness, Sgt. Arnold Schimke of the State Highway Patrol, on May 16, 1966, received a report from a truck driver of erratic operation of a certain vehicle, which the truck driver described to him. Through his two-way radio he called the Tioga police chief, Mr. Joey Peterson, at about 6:30 or 6:40 p. m. and asked for his assistance in finding the vehicle.

Mr. Peterson, while driving east on U.S. Highway 2 approximately one mile east of the junction of Highway 2 and State Highway 40, sighted a red Chevrolet which fit the description of the wanted vehicle. This car, which was traveling west on Highway 2, shortly thereafter turned onto a county road and proceeded north. Mr. Peterson turned his car around on the highway, overtook the other car, and stopped it by the use of his flashing light.

Sgt. Schimke, who was traveling west on Highway 2, saw Mr. Peterson follow the Chevrolet off Highway 2 onto the county road, and he also turned onto the county road and drove alongside the Chevrolet shortly after it had stopped. He then got out of his patrol car, walked over to the driver's side of the Chevrolet, and asked the driver for his driver's license. The driver, Larry Dokken, aged twenty-one at the time of the trial, surrendered to the highway patrolman a North Dakota driver's permit which allowed him to drive only when a licensed driver was seated next to him in the vehicle. Mr. Dokken testified that he also gave the highway patrolman his Minnesota driver's license.

Sgt. Schimke asked the passenger, Mr. Moe, for his driver's license. Mr. Moe, who by then was standing on the highway, refused to surrender his license, apparently on the ground that he was not driving the vehicle. From his language, appearance, and conduct, it was concluded by Sgt. Schimke that Mr. Moe was under the influence of intoxicating liquor.

Sgt. Schimke then informed Mr. Moe that he was under arrest for being intoxicated on a public highway, and Mr. Moe, using offensive language, took off his coat and informed the two officers that if they wanted to arrest him, they were going to have to take him in "a down position." Sgt. Schimke then walked over and placed his hand on Mr. Moe's shoulder and said: "Mr. Moe, you are under arrest," and "I would like to have you come along peacefully."

Mr. Moe assumed a fighter's stance and in very derogatory language challenged the officers to come and get him; then, cursing,

he backed away from the sergeant and fell into the ditch.

While the sergeant moved the patrol car (which had been stopped alongside the Chevrolet, which was the property of Mr. Moe) to the side of the road to let other traffic through, Mr. Moe, after scuffling with Mr. Peterson, got into his car and Mr. Dokken drove it away. The officers in their cars followed the Moe vehicle into Tioga.

On reaching the Moe residence, Mr. Dokken and Mr. Moe ran inside. The officers attempted to follow Mr. Moe and secure his custody but were unable to do so, Mr. Moe informing them that if they wanted to arrest him they would have to get a warrant.

At about 7:45 p. m., as the officers were leaving to secure a warrant, Mr. Moe ran out, kicked the side of the highway patrol car, and ran back to the house.

Later, Mr. Moe, still in an intoxicated condition, came to the police station and went to the second floor, where a court trial was in progress. On leaving the second floor following that trial, at about 9:00 p. m., Mr. Moe was again informed that he was under arrest, and, although he resisted being taken into custody, the officers were eventually able to place him in custody, where he remained for approximately twenty minutes until he was able to post bond.

The charge for which he was arrested and for which he posted bond was that of public intoxication. No warrant for arrest on this charge was ever secured, but three or four days later Sgt. Schimke obtained a warrant for his arrest on the charge of resisting an executive officer in the performance of his duties. It is from the conviction of this offense that Mr. Moe now appeals, the charge of being intoxicated in a public place being still pending.

■ The facts being as so stated, when viewed in the light most favorable to the verdict, it appears that Mr. Moe interfered with Sgt. Schimke in the performance of his duty, in that he refused to display his driver's license to Sgt. Schimke when Sgt. Schimke had a legitimate reason for asking that it be displayed so that he might determine whether Mr. Dokken was legally driving the vehicle at the time; and that he also interfered with Sgt. Schimke in the performance of his duty when he resisted Sgt. Schimke's efforts to take him into custody after the officer had informed him that he was under arrest for the offense of being intoxicated on a public highway. It is our view that being intoxicated upon a public highway is a violation of § 5–01–09, N.D.C.C., which reads as follows:

5–01–09. Being intoxicated in public place—Punishment.—Every person intoxicated in any public place is punishable by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment in the county jail for not more than thirty days, or by both such fine and imprisonment.

North Dakota Century Code.

Some issue is made of the fact that a uniform summons and complaint was issued, apparently following the placing of Mr. Moe in custody in the police station, charging Mr. Moe with public intoxication, the point being made that the uniform traffic summons and complaint is not authorized in a case such as this.

■ In light of the fact, however, that the offense for which the arrest was made, that of being intoxicated in a public place, was a public offense committed in the officer's presence, no warrant for Mr. Moe's arrest for that offense was necessary.

See § 29–06–15, N.D.C.C., the pertinent part of which reads as follows:

29–06–15. Arrest without warrant.—A peace officer, without a warrant, may arrest a person:

1. For a public offense, committed or attempted in his presence; * * *

North Dakota Century Code.

Mr. Moe refers us to the provisions of § 29–05–04, which reads as follows:

29–05–04. Accused arrested without warrant.—If any officer or other person shall bring any person he has arrested without a warrant before a magistrate, it is the duty of such officer or person to specify the charge upon which he has made the arrest. It then is the duty of the magistrate or state's attorney to make a complaint of the offense charged, and to cause the officer or person, or some other person, to subscribe and make oath to such complaint and to file it.

North Dakota Century Code.

He contends that the provisions of § 29–05–04 have not been complied with, in that a proper complaint, charging him with the offense of being intoxicated in a public place, has not been executed. As Mr. Moe is not being prosecuted in this case on that charge but on the charge of resisting an executive officer in the performance of his duty, the complaint charging public intoxication, whether it be a uniform traffic complaint or some other, is not before us.

■ That being the case, we need not decide in this opinion the legality of the complaint charging Mr. Moe with public intoxication. For a determination of the case before us it is sufficient that being intoxicated in a public place is a public offense, that the officers had reasonable grounds to believe that the offense was committed by Mr. Moe in their presence, and that he resisted with force and violence being arrested for it.

Mr. Moe also refers us to § 29–05–20 in conjunction with his assertion that he has never been taken before a magistrate on the charge of public intoxication. That section reads as follows:

29–05–20. Delay after arrest prohibited—Attorney.—The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person after his arrest.

North Dakota Century Code.

That argument, if meritorious, could be significant only in the prosecution of the charge of public intoxication. No contention has been made that there was unnecessary delay in bringing Mr. Moe before a magistrate after the warrant for his arrest on the charge that he resisted an officer in the performance of his duty was issued.

■ Mr. Moe seems to contend that even though an arrest may be made without a warrant for a public offense which has been committed in the officer's presence, the arrest on the public intoxication charge was nevertheless illegal because of the delay in taking him into custody, and thus that all testimony concerning his intoxication and resistance to arrest in the police station should have been excluded from the jury's consideration when that motion was made.

In support thereof he cites the annotation in 58 A.L.R.2d at 1056. The pertinent part thereof reads as follows:

§ 1. General rule.

It is to be remembered that under most statutory systems a peace officer has the right to arrest without warrant one who is committing or has committed a misdemeanor in his presence * * *.

\* \* \* \* \* \*

It is a general rule that once an officer has the right to arrest without a warrant for a misdemeanor or breach of the peace committed in his presence he must do so as soon as he reasonably can, and if he delays for purposes disassociated with the arrest or for such a length of time as to necessarily indicate the interposition of other purposes, he cannot arrest without a warrant.

\* \* \* \* \* \*

## § 2. Applications.

### [a] Generally.

The general rule (§ 1, supra) permitting arrests without warrant, for certain offenses less than treason or felony, if committed in the presence of the arrestor carries the implied limitation that the arrest shall be made at or within a reasonable time of the commission of the offense.

\* \* \* \* \* \*

The question of what is a reasonable time, within the meaning of the above rule, is one of law. \* \* \*

### [b] Successful challenges of arrest.

If the court is able to determine, from the record, that an arrest made without a warrant under the general rule (§ 1, supra) was delayed for some reason unconnected with a purpose to make an arrest as soon as possible, compelling the conclusion that the lack of promptness was unnecessary, it may consider the arrest unlawful.

Annot., 58 A.L.R.2d 1056 (1958).

■ We do not agree with Mr. Moe's contention. The rule holding the arrest defective when officers delay in effecting an arrest without a warrant for an offense committed in their presence is supported by cases in which the offense was committed and terminated in the officers' presence, and in the main has been applied in cases in which the officers were not prevented from making an arrest by the resistance of the one sought to be arrested. Here Mr. Moe continued to commit the offense of public intoxication by appearing at the court trial and in the police station obviously intoxicated, and he further continued to commit the offense of interfering with an executive officer in the performance of his duties by resisting arrest with force and violence in the police station. We believe that the acts were so connected that separate offenses for the acts on the highway and in the police station could not be charged.

■ That being the case, it is our view that the testimony concerning what took place in the courtroom and in the police station was both relevant and competent and thus was admissible.

Evidence is competent when it comes from such a source and is in such form that it is held proper to admit it.

Evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not exist because the conclusion in question may be logically inferred from the evidence. The criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry. Evidence of any fact is admissible as relevant which might establish the hypothesis of innocence, or show the defendant's guilt. Any evidence that assists in getting at the truth of the issue is relevant; in other words, any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts.

The concept of relevance has been defined in a variety of ways, all of which set the same standard and are but differing forms of expression. Underlying all the definitions is the concept that the evidence in question must tend to prove or disprove the existence of a particular fact, and that the existence or nonexistence of that particular fact is material or will affect the outcome of the trial.

\* \* \* \* \* \*
\* \* \* In any case, the determination of whether evidence is too remote to be relevant is left to the discretion of the trial judge, and his decision will not be reversed in the absence of clear proof of an abuse of that discretion.

1 Wharton, Criminal Evidence §§ 148–149, at 284–291 (12th ed. 1955).

 We further believe that what occurred in the police station was not so remote from what happened on the highway as to require its exclusion from the jury's consideration. Because the incident in the police station took place so near the time of the incidents on the highway and at Mr. Moe's residence, his conduct and appearance at the police station were material to show what his appearance and conduct may have been earlier, should it be contended that the offenses are divisible and that two charges of public intoxication and two charges of interference with an officer in the performance of his duties should or could have been brought.

If it should be asserted that in the interval between the attempt to arrest Mr. Moe at his residence and the taking of him into custody at the police station, his condition was affected by the drinking of beer, so as to require the exclusion of any testimony relating to his appearance and conduct at the police station, we believe that it should be pointed out that the testimony concerning the beer drinking in the interval is too indefinite to be meaningful or that the inference to be drawn therefrom makes it incredible. That testimony (by Mr. Dokken) is as follows:

Q. Now, after the officers left, where did Ernest go?

A. Ernest went into the house. I went in the house and had a bite to eat, then I took off with some other guys.

Q. What was Ernest doing when you left?

A. He was drinking again. There was about two, approximately two and a half six packs in the house and when we come back later that night there was no beer left.

Considering that the officers testified that they left the Moe residence at 7:45, that Mr. Dokken testified that he again saw Mr. Moe at 8:45 or 9:00 after Mr. Moe had been given "a ticket for public intoxication—right after the bond had been made out," and that the chief of police testified that Mr. Moe had been kept in custody for twenty to thirty minutes while bond was being secured, the interval between the attempt to arrest Mr. Moe at his residence and his being taken into custody at the police station would have been not more than forty-five minutes.

The interval in which Mr. Moe could have consumed beer at his home from the time Mr. Dokken left him to the time he was taken into custody must be reduced by the amount of time during which he sat in the courtroom above the police station. That means that he would have to have consumed 2½ six-packs of beer (15 twelve-ounce cans) in a very short time. We cannot ascertain the exact interval because the record does not show how long Mr. Moe attended the trial before he attempted to leave the building and was taken into custody.

Mr. Dokken's testimony in this respect must be considered in light of his other testimony in which he said that Mr. Moe had had only two cans of Hamm's beer before the incident on the highway. On cross-examination it was brought out that Mr. Dokken made this determination, not by seeing Mr. Moe drink two cans of Hamm's beer, but from the fact that Mr. Moe went into a bar in Stanley and was gone for only about ten minutes. In Mr. Dokken's opinion, that is about all one can drink in that time. His testimony in that respect follows:

Q. So, you are going to tell this Jury now that he had two cans of beer and you weren't even in the bar with him?

A. Well, he didn't smell beer on his breath when he went in and he smelled beer on his breath—he was gone in the bar for only 10 minutes—you can't have much more than that.

We must next consider the specification of error that the court improperly permitted the state's attorney to cross-examine Mr. Dokken concerning the circumstances surrounding a trial in which he was charged with reckless driving. The following part of the record discloses the specific objections:

Q. (By Mr. Walton [Williams County State's Attorney at the time of the trial]) Mr. Dokken, you just completed a rather interesting trial over at Tioga; didn't you?

ELLA VAN BERKOM: This is objected to as improper cross-examination; this is not within the scope of this examination. * * *

MR. WALTON: This is impeachment. * * *

ELLA VAN BERKOM: You do not impeach a witness in this fashion and we object to it.

THE COURT: I'm going to let him answer; the objection is overruled.

Q. (By Mr. Walton) It shows a bias * * * you just completed an interesting trial over at Tioga concerning yourself; didn't you?

A. Which one was that?

Q. Well, let's just use the last one— the one for reckless driving.

ELLA VAN BERKOM: This is objected to again as improper cross-examination and not within the scope of the direct examination and not the proper method of impeachment, if that's the purpose.

MR. WALTON: It shows bias. * *

ELLA VAN BERKOM: * * * whether he had an interesting trial.

MR. WALTON: * * * and it goes to his candor and it goes to his veracity.

THE COURT: Objection overruled; you may answer.

THE WITNESS: What's the question again?

Q. (By Mr. Walton) You just had a jury trial over at Tioga, didn't you, on a reckless driving charge?

ELLA VAN BERKOM: Same objection.

THE COURT: Overruled.

Q. (By Mr. Walton) Didn't you?

THE COURT: Will you answer that question now?

THE WITNESS: Yes.

Q. (By Mr. Walton) And you were convicted?

A. Yes.

Q. But you demanded a jury trial?

ELLA VAN BERKOM: This, if your Honor please, is objected to as entirely outside the scope of the * * *.

THE COURT: I'll sustain the objection.

Q. (By Mr. Walton) And what was the punishment?

ELLA VAN BERKOM: Just a minute. This is objected to as improper cross-examination and outside the scope of the direct examination.

THE COURT: On the basis of impeachment of the witness, the objection is overruled. You may answer.

THE WITNESS: What was the question again?

MR. WALTON: Read the question for him; would you?

[Reporter reads question.]

A. I was fined.

Q. How much?

ELLA VAN BERKOM: This is objected to again as improper cross-examination and not binding on Mr. Moe.

THE COURT: You may answer. Objection overruled.

THE WITNESS: $150.00.

Q. (By Mr. Walton) Who were your witnesses in that case?

ELLA VAN BERKOM: This is objected to as improper cross-examination; not within the scope of the direct examination; improper impeachment and certainly not binding on Ernest Oliver Moe.

THE COURT: Overruled; you may answer.

Q. (By Mr. Walton) Who are they?

A. They worked for KBM.

Q. Where did the offense occur?

ELLA VAN BERKOM: This is objected to again for the same reason.

THE COURT: Overruled.

ELLA VAN BERKOM: I'll add further that this is an attempt now to retry this witness in the presence of this jury.

THE COURT: You may answer.

MR. WALTON: I withdraw the question. No further questions.

In addition to the foregoing, Mr. Moe contends that the following questions asked of Mr. Dokken and his answer were also prejudicial:

Q. (By Mr. Walton) The fact of the business is that you demanded a jury trial, all the arrangements were made and you failed to show up.

\* \* \* \* \* \*

Q. The point of it is that you demanded a jury trial? Didn't you?

A. Yes.

Mr. Moe contends that all of these questions constituted improper impeachment, and although he cites no statutory or case law to support his view, he contends that he has been greatly prejudiced by the receipt in evidence of this testimony.

■ In Killmer v. Duchscherer, a decision rendered in October 1955, this court quoted an earlier North Dakota case as follows:

\* \* \* "A witness may be impeached on cross-examination by inquiries as to collateral facts tending to incriminate, disgrace, or degrade him, and *where such an inquiry is as to previous conviction on account of a criminal offense, it is not confined to conviction for felony.*" State v. Fury, 53 N.D. 333, 205 N.W. 877, Syllabus 4. [Emphasis supplied.]

Killmer v. Duchscherer, 72 N.W.2d 650, 657 (N.D.1955).

Although *Killmer* was a civil case, the rule applies in criminal cases also.

\* \* \* The rules of evidence in civil cases are also applicable in criminal cases, except as otherwise provided in Title 29, Judicial Procedure, Criminal, Section 29–2112, NDRC 1943 [now § 29–21–12, N.D.C.C.].

State v. Hanson, 73 N.W.2d 135, 139 (N.D.1955).

We note, without following the holding, that the United States Court of Appeals, in a decision rendered in November 1955, held: "Evidence of the conviction of crime as affecting the credibility of a witness is limited to conviction of a felony, an infamous crime, or a crime involving moral turpitude." Christianson v. United States, 226 F.2d 646, 655 (8th Cir. 1955), cert. denied 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859.

In *Killmer*, this court, speaking through the late Justice Johnson, said that it would have been error to allow cross-examination over objection as to the nature and the

specific details of a crime of which a witness had been convicted.

 We are of the opinion that for the purpose of impeachment the most reasonable practice, and the one generally prevailing, minimizing prejudice and distraction, is that beyond the name of the crime, the time and place of conviction, and the punishment, further details may not be inquired into. McCormick, Evidence § 43, at 92–93 (1954). Accordingly, we hold that the trial court erred, under the circumstances of this case, in permitting the cross-examination of the witness to extend beyond these points. It is our view, however, that the error is non-prejudicial.

Our conclusion, that the error is non-prejudicial and thus no basis for the granting of a new trial, is governed by § 29–28–26, which requires us, after hearing an appeal, to give judgment without regard to technical errors which do not affect the substantial rights of the parties. It is our view that the error complained of does not affect a substantial right of the defendant and thus we disregard it. State v. Dietz, 115 N.W.2d 1, 8 (N.D.1962); State v. Pusch, 77 N.D. 860, 46 N.W.2d 508.

We cannot comprehend how Mr. Moe could have been prejudiced by the fact that Mr. Dokken was asked if he had "completed a rather interesting trial over at Tioga" or by the fact that it was brought out that he demanded a jury trial and that his witnesses were employed by KBM. Certainly no stigma could be attached to the fact that a person requested a jury trial, when our own state constitution provides for one.

 Another specification of error asserted by Mr. Moe is that the court erred in including in the charge to the jury a detailed statement of the powers of the highway patrol as set out in the statute. Without going into great detail, inasmuch as this is another specification of error urged without citation of any kind of authority, it is sufficient that it be noted that we have

examined the objected-to instructions and find in them no error.

The last specification of error asserted by Mr. Moe is that the trial court erred in making the following statement during the course of the trial: "There is no question in the court's mind that the witness [Sgt. Schimke] will testify truthfully whether he is for the State or for the defendant, and I believe the record does show * * *."

An examination of the record indicates that before the court could conclude his statement he was interrupted by counsel for Mr. Moe, who said: "At this time, we will take exception to the remark of the Court as being only a determination of a matter that should be determined only by the Jury, the matter of credibility of the witnesses. It's not a matter for the Court on a jury case."

We believe an examination of the transcript of the trial court proceedings just prior to the statement by the court clearly discloses the purpose of the statement and makes it wholly unobjectionable.

Just before recess by the court on October 24, counsel for Mr. Moe had been engaged in cross-examining the highway patrolman. Counsel concluded her examination with the statement: "That's all."

When the court convened on the morning of October 25, counsel for Mr. Moe asked that the highway patrolman be called to the stand for further cross-examination. At that point the state's attorney informed the court that counsel for the defendant had completed the questioning of the highway patrolman, and after some colloquy on another matter, the state's attorney informed the court that the State rested. When counsel for Mr. Moe informed the court that a request to further cross-examine the highway patrolman had been made before the State rested, the state's attorney said: "Your Honor, I have no objection to her calling a hundred witnesses, but they are her witnesses when she calls them. She is not going to be using a State Patrolman

on cross-examination after the State has rested. She had a right to cross-examine him to any extent before she quit. Now, she can call him as her witness and this is perfectly permissible."

Following that statement the court made the statement which is objected to, and counsel for Mr. Moe made the statement heretofore set forth. The court then concluded that the record showed that at the time recess was taken on the preceding day, cross-examination had been completed; and he informed counsel for the defendant that if she wished to call Sgt. Schimke, the highway patrolman, she would have to call him as her own witness. We find no prejudice in the court's statement or in its ruling.

In conclusion, when this case is considered as a whole, it does not appear at all probable that anything upon which error has been predicated could have affected or did affect the verdict. Upon the record presented, it is our opinion that the defendant had a fair trial. The judgment of the trial court is therefore affirmed.

TEIGEN, C. J., and STRUTZ, KNUDSON, and PAULSON, JJ., concur.