STATE, Respondent v. MYERS, Appellant

(220 N.W.2d 535)

(File No. 11304. Opinion filed August 2, 1974)

Ellsworth E. Evans, Davenport, Evans, Hurwitz & Smith, Sioux Falls, **Joseph M. Butler, Bangs, McCullen, Butler, Foye & Simmons,** Rapid City, for defendant and appellant.

**William J. Janklow,** Asst. Atty. Gen., Pierre, for plaintiff and respondent; **Kermit A. Sande,** Atty. Gen., **George S. Mickelson, William J. Srstka, Jr.,** Sp. Asst. Attys. Gen., Pierre, on the brief.

WINANS, Justice.

Defendant was indicted by a Grand Jury in Brown County, South Dakota on September 11, 1972. A change of venue was granted to Brookings County, South Dakota, where the trial was held. The indictment contained two separate counts, the second of which was by the circuit court eliminated from consideration by the jury. It will not be considered further.

Count I is in the following language:

"That Morris B. Myers, on or about the 9th day of January, 1970, in Brown County, South Dakota, while being an attorney duly licensed to practice law in South Dakota, had under his control certain property for the use of another person, to wit: cash in excess of $50.00, said property being entrusted to him by Jeanette Zick, and he did then and there fraudulently appropriate said property to a use or purpose not in the due and lawful execution of his trust contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of South Dakota."

The jury returned a verdict of guilty on Count I, and defendant was given a two-year State Penitentiary sentence by the court. The defendant appeals under numerous assignments of error, but in his brief on appeal eliminates all except two questions which are covered by the assignments as herein numbered.

The defendant presents such questions as follows:

"I

"DOES THE RECORD SUPPORT THE CONVICTION OF DEFENDANT OF THE ACT AND INTENT NECESSARY TO CONSTITUTE EMBEZZLEMENT? (Assignments of Error I and IV)

"II

"DID THE COURT ERR IN REFUSING TO ALLOW THE DEFENDANT TO TESTIFY AS TO THE REASONS WHY HE BELIEVED HE HAD THE RIGHT TO CASH THE BONDS AND PLACE THE PROCEEDS IN HIS BANK ACCOUNT? (Assignment of Error II)"

The key words in the first question presented for review by this court are "act" and "intent". Is the evidence sufficient in this regard?

Our review must be considered under some well known principles heretofore announced by this court. In the case of State v. Henry, 1973, 87 S.D. 454, 210 N.W.2d 169, 171, we held:

"* * * As a reviewing court we must view the evidence in light most favorable to the state on appeal from a conviction. This court held in State v. Geelan, 1963, 80 S.D. 135, 120 N.W.2d 533, 536:

'Accepting the state's evidence and indulging the most favorable inferences which can fairly be drawn therefrom, as the jury had a right to do, we have no hesitancy in holding that the evidence is sufficient to sustain the verdict.'

The North Dakota Supreme Court has so held in State v. Moe, 1967, 151 N.W.2d 310."

■ The section defining the embezzlement charged here is covered by SDCL 22-38-3, and whether or not the acts of the defendant were sufficient to come within the purview of that particular section is largely a fact question. Fact issues are peculiarly within the province of the jury. Here there were two different versions of those acts. The State gave its version and the defendant gave his. It appears the jury accepted that given by the State and rejected that by the defendant. This court in State v. Olson, 1968, 83 S.D. 493, 161 N.W.2d 858, has held:

"The facts were for the jury and this court will not disturb the verdict unless the evidence as a matter of law is insufficient to justify the jury finding defendant guilty."

■ The credibility of witnesses and weighing the evidence is for the jury. State v. Burtts, 81 S.D. 150, 132 N.W.2d 209; State v. Buffalo Chief, 83 S.D. 131, 155 N.W.2d 914. In the recent case of State v. Hanson, 1974, 88 S.D. 48, 215 N.W.2d 130, quoting from an earlier case, we said:

" 'When the state has introduced evidence upon which, if believed by a jury, they may reasonably find the defendant guilty of the crime charged, the state has

made out a prima facie case, and the jury, not the judge, ought to pass upon it.'

The jury heard the evidence as offered by the state and the evidence offered in support of appellant's defense. As indicated above, the trial court permitted wide leeway in letting appellant develop his defense. His defense was also fully covered by the court's instructions. Thus the question of appellant's guilt or innocence was fairly and fully submitted to the jury. It is well established by decisions of this Court that 'The jury are the exclusive judges of the credibility of the witnesses and the weight of the evidence.' "

It would extend this opinion beyond reasonable length to review the evidence fully herein, so we will briefly summarize.

The parties in a divorce action, Mr. and Mrs. Zick, called on Mr. Myers to get the divorce. The husband was to pay for the legal services, and defendant Myers was to get the divorce for Mrs. Zick. Certain United States Savings Bonds, property of Mrs. Zick, registered in the names of Herman Weismantel, P.O.D. Mrs. Jeanette Zick, were discussed. The defendant told Mrs. Zick that the value of the bonds would bring a better rate of interest if they were cashed and invested in something else. Mrs. Zick was requested by defendant to endorse the bonds, which she did. The defendant then took the bonds so endorsed to a local bank for redemption, and the bank sent them in to the Federal Reserve Bank. The defendant on the strength of the bonds and his personal note borrowed from the bank the amount of the redemption value in the sum of $4,035.60 which he deposited in his own personal account. The defendant gave his personal note to the bank. He told the banker that he needed the money that day so that he could give the money to Mrs. Zick because of her financial condition. Defendant asked the banker if he could borrow the money, then when the proceeds were received, to apply "those against the note to pay it off." This is what was done, and when the proceeds of the redeemed bonds were returned to the bank, the note signed by defendant was canceled as paid in full. The bank endorsed the check from the treasurer of the United States with a credit and guaranteed the endorsement. It was not endorsed by Mrs. Zick.

The defense is that when Mrs. Zick came to defendant he went over her papers among which were the bonds. He discussed with her the needs of the family and suggested cashing the bonds and using the proceeds in some investment yielding a high rate of interest. Defendant stated that there was an individual named Roberts who owned a piece of property which he had sold by contract for deed, and that Mr. Roberts also owed defendant money. The contract for deed was paying an 8% return on the balance due along with monthly payments. Defendant claims he informed Mrs. Zick that the contract was a sound investment, and that it would provide monthly payments for her to apply against living expenses and it would increase her income up to a level with her other income, which would support her and her children. Defendant testified that Mrs. Zick and defendant discussed the matter of the difference in the interest rates, and that she would be receiving a two and a half to three percent increase. Mrs. Zick agreed to take it. To accomplish this end defendant drafted a deed to the property from Roberts to Mrs. Zick which was executed by Roberts. Defendant never gave her the deed from Roberts, but he claimed he had informed Mrs. Zick of its existence.

It was Mrs. Zick's testimony that she discharged defendant as her attorney the end of February or first part of March 1970, and it was not until some time in April 1970, and after she had discharged him, when defendant first told her the bonds had been cashed "but he didn't have time to go into what they had been invested in." This was the first time she had been informed they had been cashed. It was not until August 1970 that defendant paid the proceeds of bonds over to her new lawyer, less $617.50 for attorney fees for services rendered by him in the case of Zick v. Zick. The statement dates from December 30, 1969 to March 2, 1970. The remittance from defendant to Mrs. Zick's new attorney is in the amount of $3,418.10. Mrs. Zick received her divorce through the services of her new attorney.

We have given but the skeletal outline of the claims made in the case. The stories told in court by Mrs. Zick and the defendant were conflicting, and also the banker's testimony was damaging to the defendant. It was for the jury to search out the truth.

The appellant under question I of his appeal has listed as foundation for such question his assignments I and IV. Assignment I is as follows:

> "The Court erred in overruling the objection of the defendant to the introduction of any evidence under the indictment for the reason that the indictment failed to state a public offense or charge a violation of any law of the State of South Dakota."

The law which defendant is charged with violating is SDCL 22-38-3, supra, and reads as follows:

> "If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator, or collector, or being otherwise entrusted with or having in his control property for the use of any other person or persons or for any public or benevolent purpose, fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with the fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

At the beginning of the case defendant's attorney made the following objection:

> "Before any testimony is taken, the defendant objects to the introduction of any evidence on the part of the State for the reason and on the grounds that the indictment fails to state a public offense or charge of violation of any laws of the State of South Dakota, and in fact, I point out to the court that the indictment fails to allege the ownership of the money and fails to allege the name of the person against whom the offense was committed; that being wholly as required by the statute. And for the record, that is SDCL 23-32-5."

SDCL 23-32-5 reads as follows:

> "The indictment or information must be direct and certain as it regards:

 (1) The party charged;

 (2) The offense charged;

 (3) The name of the thing or person upon or against whom the offense was committed."

 court overruled this objection, and we believe correctly. The indictment stated that the person who had entrusted the money to the defendant was Jeanette Zick, and it sets forth the facts done by defendant upon which he was being charged.

In State v. Blue Fox Bar, Inc., 1964, 80 S.D. 565, 128 N.W.2d 561, 563, we stated the rule to be:

> "The test of the sufficiency of an information under these provisions is whether it apprises a defendant with reasonable certainty of the nature of the accusation against him so that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455; State v. Wood, 77 S.D. 120, 86 N.W.2d 530; State v. Belt, 79 S.D. 324, 111 N.W.2d 588."

See also State v. Henry, 210 N.W.2d 169, supra, at pages 173, 174.

Assignment IV under question I reads as follows:

> "The Court erred in denying the defendant's motion for a directed verdict of acquittal for all the reasons stated in the motion for directed verdict of acquittal made at the close of all of the evidence."

 motion made at the close of all the testimony is a long one which we will not set forth at length. We reiterate this, however, the evidence was conflicting. If Mrs. Zick was correct in her testimony, if the banker was correct in his, then the defendant was wrong in certain crucial aspects of his. There was at least a prima facie case made by the state "and the jury, not the judge, ought to pass upon it."

The word "intent" used in question I by appellant is also closely connected with question II heretofore set forth and hereinafter discussed. The court used the word "intent" in a number of his instructions to the jury and then in instruction 9 gave guidance to the jury how "intent" is found in the context of the case. No objection was made, and we believe the instruction expressed the correct law.

■ Point II or Question II by appellant brings up a ruling by the trial court refusing to allow the defendant to testify why he in good faith believed he had the right to cash the bonds and place the proceeds in his bank account. This defense is specifically authorized by SDCL 22-38-10 which provides as follows:

> "Upon any trial for embezzlement it is a sufficient defense that the property was appropriated openly and and avowedly and under a claim of title preferred in good faith even though such claim is untenable. But this provision shall not excuse the retention of the property of another to offset or pay a demand held against him."

This assignment is predicated upon the offer of proof which was made by the defendant at the trial. It is predicated on the following questions and answers:

"Q Mr. Myers, did you believe, when you completed this transaction over at the bank, and the banker put the money in your account, did you believe that you had the right to do that?

A Yes, I did.

\* \* \* \* \* \*

would you state why you believed you had the right to do it?

A I was authorized by Mrs. Zick when she signed the bonds.

Q Did you continue to believe that you had that right, up to and after you completed the deal?

A Certainly.

BY MR. BUTLER: Now I would just like to point out to the court that this offer of proof is based on SDCL 22-38-10.

\* \* \* \* \* \*

BY THE COURT: Well, it seems to me that it is a self-serving statement as to what he believed. The testimony here is that she endorsed the bonds and he received the proceeds which were put into his checking account.

Well, I am going to permit the answer to that first question, that he believed he had a right to put that in his account. That is as far as we will go with it. That is the one that was stricken out."

The jury was returned and the court had the reporter read the first question of the three asked, and the answer to it, to the jury. This limits the error, if any, to questions two and three and their answers.

The contention of defendant is stated as follows:

"The state of mind of the Defendant was clearly a material issue in this case under SDCL 22-38-10. Denying him the right to explain his actions was highly prejudicial. The Court submitted the issue of the Defendant's good faith to the jury in the instructions, but yet denied him the right to state to the jury what his state of mind was and his reasons therefor. This clearly was prejudicial error."

We believe the court was clearly wrong in his denial of the last two questions and the answers. Warner v. Hopkins, 42 S.D. 613, 176 N.W. 746; State v. Holter, 30 S.D. 353, 138 N.W. 953; Wigmore on Evidence, 3rd Ed., § 581, pp. 714 and 715.

The question we have here, however, is whether the error of the court was prejudicial to the substantial rights of the defendant. SDCL 23-1-2. We hold it is not.

In State v. Reddington, 80 S.D. 390, 125 N.W.2d 58, we held:

> "There is no definite rule by which to measure prejudicial error and each case must be decided on its own facts."

In a definition of prejudicial error we have said:

> "Prejudicial error is such error as in all probability must have produced some effect upon the final result of the trial, namely, the verdict of the jury." State v. Pirkey, 24 S.D. 533, 124 N.W. 713.

An examination of the whole testimony of the defendant shows that it is replete with questions and answers of similar content and importance to the defendant's contention. Actually there is nothing in the offer of proof that wasn't fully and completely before the jury by the evidence of the defendant himself. We hold that the denial of the two questions together with their answers in the offer of proof was simply not prejudicial under the circumstances. It added nothing to his previous testimony and a reversal on this error would be to exalt form over substance. The defendant had a fair trial.

The judgment is affirmed.

DOYLE, J., and RENTTO, Retired Judge, concur.

BIEGELMEIER, C. J., concurs by opinion.

DUNN, J., concurs specially.

RENTTO, Retired Judge, sitting for WOLLMAN, J., disqualified.

BIEGELMEIER, Chief Justice (concurring).

As the last paragraph of the opinion states and the record shows, the two questions called for evidence given by the witness in his prior testimony; consequently, they were repetitious and cumulative, and the court did not err in sustaining the objection to them.*

DUNN, Justice (concurring specially).

I would concur in affirming the decision of the trial court under the facts of this case. I believe, however, that a word of caution is in order as to the implications of this decision.

The intermingling of a client's funds with his own by an attorney is a serious breach of trust and has always been frowned on by the legal fraternity. I am sure that most attorneys have trust accounts for their clients' funds, but to those few who don't I would state that this charge of embezzlement should be a red alert; a trust account for clients' funds becomes imperative; and, further, personal bills best not be paid out of that trust account. At some place the commingling of clients' funds with one's own becomes embezzlement. If personal checks are written by the attorney on an account containing clients' funds, this is sufficient to show appropriation under the broad language of SDCL 22-38-3 as interpreted in this decision. This leaves the issue of "fraudulent intent" which generally must be proved by implication from the facts surrounding the case. The circumstances in this case are flagrant enough to leave little doubt that this issue was properly submitted to the jury for resolution. The question left unanswered is—at what stage do the circumstances surrounding the commingling of funds make out a prima facie case of embezzlement for submission to a jury?

---

* Some of the evidence of the haste and unorthodox method by which Mrs. Zick lost her "E" bonds shows that she did not sign the "E" bonds in the presence of the Assistant Vice President of the bank or state to him that she did sign them, yet he certified that she "signed the above request in [his] presence." The check in payment of these bonds was made payable to Mrs. Jeanette Zick. The undisputed evidence also shows it was credited to the account of Morris Myers; however, the endorsement states that it was credited to the account of the "payee," Mrs. Zick. The banker did this because he "trusted" defendant, and his representations and urgings of haste were evidence of defendant's intent to obtain the proceeds of the bonds for his own use.