## STATE *ex rel.* VAN NICE v. WHEALEY.

1. In statutes, as in contracts, words are presumed to mean what they ordinarily mean in general use.

2. Where the ,intent of the legislature and the object and purpose of a law are plainly apparent, and such manifest intent and purpose are not inconsistent with, or outside the terms of, the law, it is not allowable to permit such intent or purpose to be defeated because not defined and declared in the most complete and accurate language.

3. Chapter 2, Laws 1891, defining and punishing adultery, declared not to be invalid or inoperative on the ground of uncertainty.

(Syllabus by the Court. Opinion filed May 28, 1894.)

Application of the state, on the relation of Henry D. Van Nice, for writ of *habeas corpus* against Rufus H. Whealey. Denied.

The facts are fully stated in the opinion.

No briefs filed.

*J. A. Sawyer* and *John P. Alexander* for relator.

*Coe I. Crawford*, Attorney General, *H. D. Jones*, States Attorney, Moody county, and *J. Q. Adams* (*P. C. Shannon* of counsel) for defendant.

KELLAM, J.   The defendant is the sheriff of Moody county and as such holds the relator in custody upon, and after conviction of, the alleged crime of adultery.   The relator has sued out of this court a writ of *habeas corpus*, asking that he be released on the ground that the statute under which he was convicted is void.   The statute, so far as immediately involved, reads as follows:   "Adultery is the unlawful voluntary sexual intercourse of a married person with one of the opposite sex, and when the crime is committed between parties only one of whom is married, both are guilty of adultery."   Section 1, c. 2 Laws 1891.   The relator contends that the legislature having affirmatively undertaken to specifically define what shall constitute adultery in this state, the courts are concluded by such definition, and may not look elsewhere; that by such act of the legislature the offense is purely a statutory one; that if the definition so formulated and enacted by the legislature is defective or uncertain, it cannot be supplemented or helped out by any other definition of the offense, drawn from sources outside the statute; that to constitute voluntary sexual intercourse adultery, it must be "unlawful," and that as the statute nowhere assumes to define what intercourse is lawful, and what is unlawful, it is impossible for the courts to apply the law to any given case, for in respect to no case can they find a law of the state declaring the act charged or proved in such case to be unlawful; that, in a word, the definition fails to define, and is so uncertain, incomplete, and defective as neither to inform the citizen of his rights and liabilities under it nor enable the courts, with the certainty required in criminal law, to declare its legal effect.

While these views, and such as they naturally suggest, were very forcfully presented by relator's counsel, we are not persuaded that they are controlling.   There, of course, can be no doubt that the legislature intended to characterize and constitute some act of sexual intercourse as adultery; and the only question is whether they have been so unfortunate in the se-

lection and use of terms as to defeat, or leave unaccomplished, such intent.    The section, in its present form, seems first to have been passed as section 333 of the Penal Code of 1887. The subsequent enactment of congress of the Edmunds law, with particular reference to the territory of Utah, but not explicitly confined thereto, opened up the question of whether the law defining and punishing adultery still existed in the territory, or was repealed by the said Edmunds law.    We understand as a matter of history, that one or more of the district or circuit judges held that the territorial law was superseded by the act of congress, and that, as a result, we had in this jurisdiction no law defining or punishing adultery.    Under these circumstances the law of 1887 was re-enacted by the legisla ture of 1891, and is the section we are now considering.    It thus appears that for many years this precise section has stood as the law of this jurisdiction, and, so far as we know, has never before been challenged, but has been acquiesed in and respected as the law by the bench, the bar, and the people of the state.    It thus has had the sanction of contemporaneous understanding and exposition as a valid and operative law. Speaking of the weight and value of contemperaneous construction, Sutherland says: ''This, after the lapse of time, without change of that construction by legislative or judicial decision, has been declared to be generally the best construction.    It gives the sense of the community as to the terms made use of by the legislature.''    Suth. St. Const. § 307.    So, here, I apprehend that the sense of the community would not hesitate or be divided as to the meaning of this section, or as to what constitutes adultery under it.    While it is very desirable and very important that every law be so accurately phrased as to admit of no question or doubt as to its meaning, courts have uniformily sustained a law, if the certain intent of the legislature were plainly readable from it. The whole question of the validity or invalidity of this law hangs upon the certainty or uncertainty in meaning of the

word "unlawful." Is it candidly believed that any person in the state—lawyer or layman, educated or uneducated—entertains an honest doubt as to what the legislature intended by "unlawful sexual intercourse?" Suppose, for "unlawful," the legislature had used its common synonym "illicit." Would it still be contended that, to give the act operative force, a section of the statute must be found which expressly declared what acts of sexual intercourse should be regarded as illicit? In statutes and in contracts, words are presumed to mean what they ordinarily mean in general use. Believing there is no room for reasonable doubt as to the definite and certain intent of the legislature it becomes the duty of the court to construe the act, not strictly, as under the old rule of the common law, but liberally, as required by the express rule of the Code, "with a view to further its object." Section 7656, Comp. Laws. So often has it been announced that the intent of the law constitutes the law itself, that it is supererogatory to collate authorities. See 23 Am. & Eng. Enc. Law, p. 305, 306 and cases cited. We do not mean, of course, that it is allowable for courts to substitute their notions of what the law ought to be for what the legislature has made it; but where the intent of the legislature, and the object and purpose of the law, are plainly apparent, and such manifest purpose and intent are not inconsistent with, or outside of the terms, of the laws, it is not justifiable or allowable to permit such intent or purpose to be defeated, because not defined and declared in the most complete and accurate language. Upon the argument, it was urged that adultery was not a criminal offense at common law, and hence that even such acts of intercourse as would have been termed "adultery" under the common law are not unlawful, unless made so by statute. It is true that adultery was not a crime indictable and punishable in the temporal courts of the kingdom. It was regarded as an offense so essentially wicked, so subversive of private and public morality, and so opposed to the precepts and practice of religion, that its punishment was

left to the ecclesiastical courts; but it was still unlawful, within the view of the common-law courts, and recognized as such an intolerable legal wrong and violation of fundamental rights as to constitute a most aggravated cause of action. If the term "unlawful" is meaningless, except in relation to an express provision of statute, then there is no such criminal offense in this state as assault or battery; for one defined to be the "unlawful attempt or offer with force or violence to do a corporal hurt to another," and the other "an unlawful use of force or violence upon the person of another." These definitions are not peculiar to this state, but are found in the penal codes of other states. No statute tell us when force or violence used upon the person of another is lawful, and when unlawful. It is horn-book law, well known and understood by everybody, that whether lawful or unlawful depends upon the relation of the parties. So as to sexual intercourse. It is sometimes lawful and sometimes unlawful, depending upon the relation of the parties. No express statute is needed in either case, for none is required to carry certain and definite knowledge to every individual in the state of what is lawful and what is unlawful in either case. There can be no possible danger of any person becoming liable to punishment under this statute because he did not understand its meaning, or did not know what acts of sexual intercourse were covered by the term "unlawful." In the law under discussion, and generally, the word "unlawfully" is the antithesis of "lawfully." Of the meaning and force of the word "lawful," Anderson, in his Dictionary (page 610) says: " 'Legal' looks more to the letter, and 'lawful' to the spirit, of the law. 'Legal' is more appropriate for conformity to positive rules of law; 'lawful,' for accord with ethical principles. 'Legal' imports, rather, that the forms of law are observed and the proceeding is correct in method,—that rules prescribed have been obeyed; 'lawful,' that the act is rightful in substance,—that moral quality is secured." The briefs of counsel on both sides were thorough

and elaborate, and covered much incidental reasoning, but we are satisfied to rest our opinion upon this simple ground. We think the law is not invalid, as claimed by relator, and that he should be remanded to the custody of the sheriff. It is so ordered.