STATE, Respondent v. HENRY, Appellant

(210 N.W.2d 169)

(File No. 11153. Opinion filed August 28, 1973)

**Donald R. Shultz,** of **Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun,** Rapid City, for defendant and appellant.

**Walter W. Andre,** Asst. Atty. Gen., **Kermit A. Sande,** Atty. Gen. (on the brief), Pierre, **Jack T. Klauck,** State's Atty., Rapid City, for plaintiff and respondent.

WINANS, Justice.

The defendant, Joseph Henry, convicted of the crime of attempted third degree burglary with intent to commit larceny, appeals such conviction by assignments of error which present the following questions for review:

(1) Sufficiency of the evidence to identify defendant as the person who committed the crime;

(2) Sufficiency of the information;

(3) Lack of definition of certain words in the court's instructions.

Under the assignment having to do with the sufficiency of the evidence, the defendant contends that the evidence, direct or circumstantial, fails to identify the defendant other than by mere speculation and conjecture on the part of the jury. The evidence given at the trial was wholly on behalf of the state's case, the defendant offering no evidence. As a reviewing court we must view the evidence in light most favorable to the state on appeal from a conviction. This court held in State v. Geelan, 1963, 80 S.D. 135, 120 N.W.2d 533, 536:

"Accepting the state's evidence and indulging the most favorable inferences which can fairly be drawn therefrom, as the jury had a right to do, we have no hesitancy in holding that the evidence is sufficient to sustain the verdict."

The North Dakota Supreme Court has so held in State v. Moe, 1967, 151 N.W.2d 310.

The evidence on behalf of the state stands undisputed and the material facts to the issue involved are:

City police officer, Charles B. Johnson, on January 19, 1972 at approximately 4:00 o'clock A.M. was traveling in his patrol car at 10 to 15 miles per hour in the vicinity of Star Liquor Store in the 1100 block of Main Street in Rapid City, Pennington County, South Dakota. He observed two. individuals standing in the northeast door of the Star Liquor Store. Johnson drove beyond, or to the west of the liquor store, stopped and drove in reverse for a "bootlegger turn". When the vehicle was turned the lights focused on the two individuals in the doorway of the Star Liquor Store and they took off, running. Officer Johnson testified that he recognized the smaller one of the individuals as a Mr. Prue. When the two individuals ran, Officer Johnson jumped out of the patrol car and took after them on foot. When Officer Johnson first saw these two individuals and before he left his car, he had communicated with headquarters that there was a burglary in process and he also notified another officer, named Price. The two whom Officer Johnson was chasing separated, running in different directions. Officer Johnson testified to the following:

"Q    Now, then, continue and tell the jury exactly what you did after you left the patrol car and you kept Walter Prue in your sight, I believe.

A    Right.

Q    And you lost sight of the other individual?

A    Yes.

Q    Tell the jury what happened.

A    Mr. Prue ran more in an easterly direction along side the tracks, and I yelled at him to halt, and at that time Sergeant Price came upon him from Rapid Street on to 11th Street, and Mr. Prue threw his hands in the air.

Sergeant Price departed from his patrol unit and apprehended Mr. Prue, and at that time I yelled at Sergeant Price, 'Do you have him,' and he said, 'Yes,' and I took after the other individual I had lost sight of.

I went around the front of D & J Auto out to Main Street, looked up and down the street, saw nobody, went back behind the building of D & J Auto where there was an abandoned vehicle. I continued to search the vehicle, and I found Mr. Joe Henry lying under an abandoned pickup.

Q  Now, this Mr. Joe Henry, is he present in the court-room?

A  Yes.

Q  Would you point to him, please.

A  Sitting next to counsel.

MR. KLAUCK: Let the record show the witness had pointed to the Defendant."

Officer Johnson also testified that the pickup under which he found the defendant was 75 to 80 feet from the rear of Star Liquor and that from the time he first drove upon these individuals until he found Mr. Henry underneath the pickup was approximately two minutes. He further testified that when Mr. Henry came out from under the pickup, "Mr. Henry was breathing quite heavily and perspiring", that the temperature was "cold and snowing." He further testified that when he lost sight of the individual with Prue was when the individual rounded the corner of an old vehicle and that that vehicle was approximately 30 feet from the vehicle under which Henry was found. On cross-examination, Officer Johnson testified as follows:

"Q  Lieutenant Johnson, as I understand it, when you first located Joseph Henry the Defendant here he was under a parked pickup; is that right?

A Yes.

Q And you are not able to say, are you, sir, that the man you found under the pickup, that is, Joseph Henry was the same—one and the same man you saw at the Star Liquor Store, are you?

A No, sir."

■ We recognize that in the absence of evidence of participation a conviction cannot be sustained on the basis of defendant's presence at the scene of the crime. United States v. Irons, 1973, 8 Cir., 475 F.2d 40. Mere presence at the scene of a crime is not enough to prove defendant committed the offense. State v. Jellema, 1973, Iowa, 206 N.W.2d 679; State v. Peck, 82 S.D. 561, 150 N.W.2d 725.

■ It is well established that in criminal as well as civil actions issues may be established by circumstantial evidence and circumstantial evidence alone may justify conviction providing it is of such probative force as to enable the trier of fact to say that defendant is guilty beyond a reasonable doubt. State v. DePriest, 1973, N.D., 206 N.W.2d 859. It was held in State v. Johnson, 1940, 67 S.D. 459, 293 N.W. 822, that:

" 'To warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading on the whole to a satisfactory conclusion, and pointing to a moral certainty that the accused committed the offense charged; and it is invariably the rule of law that, to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other, and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent; * * * ' "

(citations omitted)

Further guidelines on the weight and sufficiency of circumstantial evidence are found in State v. Scott, 84 S.D. 511, 173 N.W.2d 287.

■ It is also "a general rule that the question of identity is a question for the jury, as is also the credibility of the witness, or witnesses, testifying as to identity, and the weight to be given the testimony." State v. Johnson, supra.

■ We think the evidence in this case, though circumstantial, was sufficient to identify appellant as a participant in whatever crime was being committed. His identification as a participant is borne out by the fact that he fled, that within two minutes he was captured under a vehicle 75 feet from the building being burglarized, 30 feet from a vehicle where he was last seen, on a cold night, breathing heavily and perspiring. This is all circumstantial evidence and we believe it to be sufficient. State v. Rodden, 1972, S.D., 201 N.W.2d 232, 234. These issues were presented and argued to the jury whose conclusion is based upon competent evidence.

The defendant also complains of the information which charged:

"That the Defendant, Joseph Henry, at Rapid City, in said Pennington County, State of South Dakota, on or about the 19th day of January, A.D. 1972, then and there being did then and there, wilfully and unlawfully, and feloniously did attempt to break and enter into a building, to-wit: Star Liquors, 1110 West Main Street, Rapid City, South Dakota, said building not being the property of the defendant, in which building property was kept, with intent to commit larceny as defined in SDCL 22-32-9, in violation of SDCL 1967 22-4-1".

It is defendant's contention that the description, "Star Liquors" is insufficient to indicate who owned the building and that the allegation of ownership is not satisfied by "said building not being the property of the defendant", and that the failure of allegation of ownership is a material allegation, quoting State v. Ham, 1908, 21 S.D. 598, 114 N.W. 713. We note that SDCL 23-32-14 provides as follows:

> *"Larceny or private injury—Effect of erroneous allegations.*—When an offense involves the commission of larceny or the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured, or the ownership of the property taken, is not material."

Ham, supra, is not authority for defendant's position. In Ham it was charged that the defendant stole "twenty-two head of cattle, the same being neat, and which cattle were then and there all steers two and three years old, * * * owned by * * * C. F. Coppersmith and C. Reid, * * * and not the property of the said John Ham * * *." The evidence disclosed that Louis Comer was a part owner of the cattle. The defendant moved to strike the evidence pertaining to ownership on the ground that proof of ownership was at variance with the allegations in the information. This was overruled by the lower court.

The Supreme Court, in overruling the lower court had this to say: "It will be observed, however, that in the information the only allegation descriptive of the property alleged to have been stolen is the ownership; that the 22 head of livestock are only described as steers two and three years old of the value of $700. Clearly such description independently of the ownership might be applied to any 22 head of steers two and three years old found in any herd of livestock in the state, and does not serve to identify any particular steers, and consequently that without the allegation of the ownership of the property there is nothing by which the same can be identified."

The description in our information is not that general; further, in the later case of State v. Wilson, 36 S.D. 416, 155 N.W. 186, this Court held that where an information failed to allege the ownership of the burglarized building but did identify it by the city lot and block, and also as a building in which a firm whose individual names and firm name were stated as those of the owners of a hardware store kept by them therein sufficiently describes and identifies the building. The court quoted from People v. Prather, 120 Cal. 660, 53 P. 259, as follows:

" 'Suppose we admit, as is contended, that a person could not be convicted of burglary as to his own house not occupied by another; it does not follow from this that the defendant must be informed in the complaint or information that the house in question is not his, or that it belongs to another. If the house is described by street and number, he can find out, if he does not already know, whether it is his or not, and can suffer no prejudice by the absence of an allegation as to ownership.' "

Again, in a still later case, State v. Blue Fox Bar, Inc., 1964, 80 S.D. 565, 128 N.W.2d 561, this court after referring to the applicable state statutes, said: "The test of the sufficiency of an information under these provisions is whether it apprises a defendant with reasonable certainty of the nature of the accusation against him so that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense." (citations omitted). The Blue Fox Bar case has stood as a warning to the prosecution to be precise in the criminal charge against the defendant as contained in the information filed against him.

■ We hold that the information in the case at bar was sufficient to apprise the defendant of the nature and cause of the accusation against him, that he could not possibly have been misled, that the building is sufficiently identified, and that he could prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense.

■ The third and last contention of the defendant is the failure of the judge to define the words, "wilfully", "unlawfully", "break" and "intent". The defendant has not made his record properly to raise this issue of definition. He did not propose any instructions regarding the matter of which he now complains. He is, therefore, precluded from assigning as error the failure to give instructions he claims should have been given. In State v. Greene, 86 S.D. 177, 192 N.W.2d 712, we held:

"The court declined to give four instructions requested by the defendant. He complains of this. The re-

quests for these were made orally on the settlement of the instructions. This does not comply with the provisions of SDCL 15-6-51(a) which requires that all requests for instructions shall be in writing and in duplicate. It also spells out the physical makeup of them which, if complied with, will enable the trial judge to insert the original of any requested instruction which he adopts in the set which is to be used by the jury. The requirements of this rule must be substantially complied with. 53 Am.Jur., Trial, § 516; 88 C.J.S. Trial § 397, p. 1084. Since they were not, the court did not err in refusing to adopt them."

See also State v. Nelson, 80 S.D. 574, 129 N.W.2d 54 and State v. Halverson, 87 S.D. 110, 203 N.W.2d 421.

■ However, facing the issues squarely which defendant raises, we think the specific words as used in context with which the defendant finds fault for lack of specific definition are simple words, which as used in the instructions either were explained or are self-explanatory and readily understood.* The instructions did explicitly set forth the elements necessary for the state to prove the offense charged.

In the case of State ex rel. Van Nice v. Whealey, 5 S.D. 427, 59 N.W. 211, this court, among other things, said:

"While it is very desirable and very important that every law be so accurately phrased as to admit of no question or doubt as to its meaning, courts have uniformly sustained a law, if the certain intent of the legislature were plainly readable from it. The whole question of the validity or invalidity of this law hangs upon the certainty or uncertainty in meaning of the word 'unlawful.' Is it candidly believed that any person in the state—lawyer or layman, educated or uneducated—entertains an honest doubt as to what the legislature intended by 'unlawful sexual intercourse?' * * * In

* 169 A.L.R. 315.

statutes and in contracts, words are presumed to mean what they ordinarily mean in general use. * * * There can be no possible danger of any person becoming liable to punishment under this statute because he did not understand its meaning, or did not know what acts of sexual intercourse were covered by the term 'unlawful.' In the law under discussion, and generally, the word 'unlawfully' is the antithesis of 'lawfully.' "

Judgement affirmed.

BIEGELMEIER, C. J., HANSON and WOLLMAN, JJ., and RENTTO, Retired Judge, concur.

RENTTO, Retired Supreme Court Judge acting by appointment pursuant to SDCL 16-8-13, sitting for DOYLE, J., absent.