STATE of South Dakota, Plaintiff and Appellee,

v.

Thomas Wayne BRIM, Defendant and Appellant.

No. 12889.

Supreme Court of South Dakota.

Submitted on Briefs March 13, 1980.

Decided Oct. 29, 1980.

Margaret Crew, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

E. James Hood of Richards, Hood & Brady, P. C., Spearfish, for defendant and appellant; Thomas E. Brady of Richards, Hood & Brady, P. C., Spearfish, on brief.

HENDERSON, Justice.

### ACTION

Thomas Wayne Brim, appellant, was found guilty by a jury on June 19, 1979, of possession of a controlled substance and possession of a controlled substance with intent to distribute. Appellant was sentenced to serve five years in the state penitentiary on each count and fined $3,000 on each count. Appellant appeals the entire sentence urging the errors discussed below. We affirm.

### FACTS

At approximately 11:00 p. m. on August 11, 1977, appellant and four or five other individuals were observed on the Main Street of Sturgis, South Dakota, by Charles Vollmer, an off–duty deputy sheriff from Hughes County. Deputy Vollmer followed appellant and these individuals until they stopped near a motorcycle which was parked in the street. The motorcycle was a red Honda Gold Wing GL1000 with a black fairing. Appellant was observed by Deputy Vollmer to place his hands down behind the fairing where Deputy Vollmer could not see them. Immediately thereafter, an exchange occurred between appellant and one of his companions, although Vollmer was unable to tell exactly what was changing hands. A Sturgis on–duty reserve policeman, Stan Day, arrived in the area at this time. Officer Day also observed the aforementioned exchange. Appellant was subsequently placed in a Sturgis patrol car by the officers and taken to the Sturgis Police Department. There, appellant was arrested and incarcerated in the Meade County jail at 11:46 p. m.

Prior to placing appellant in the patrol car, Officer Day observed appellant trying to hand an unidentified object to another individual. Appellant replaced the object in his pocket and fidgeted with it as he was being transported to the police department. Officer Day saw appellant drop something on the floor of the patrol car but could not tell what it was. After appellant was taken to the Sturgis Police Station, the aforementioned patrol car was called back into service and did not return to the station until approximately midnight. At this time Officer Day found a cylinder–shaped vial containing a white substance on the back seat of the patrol car.

Wayne O'Connor, an officer with the Sturgis Police Reserve, remained with the aforementioned motorcycle until Officer Day returned at approximately midnight. The motorcycle was then towed to the police station. Sturgis attorney John H. Shepard was at the police station waiting for a friend when the motorcycle was brought in. At the November 14, 1977 hearing to suppress the evidence found in the motorcycle, Attorney Shepard testified that he heard Officer Day make the following statement when the motorcycle was brought into the police station: "We found enough stuff in that bike to get the whole city high." Attorney Shepard testified at

the suppression hearing and at trial that, while standing next to the motorcycle at the station, he observed the lid ajar on the motorcycle's storage compartment. This storage compartment is built into the gas tank. Attorney Shepard further testified that one of the fairing pockets on the motorcycle was open and that a bandana was hanging out of it.

Ronald Munoz, a lieutenant with the Sturgis Police Department who was present when the motorcycle was brought into the police station, testified at the suppression hearing that he had heard the statement: "There was enough crap in there to get the whole city of Sturgis high." Lieutenant Munoz was not able to identify who had made the statement.

Appellant testified that after posting bond on August 12, 1977, he went to the Sturgis Fire Station where his motorcycle was being kept and observed uniformed police officers "going through" his motorcycle. At this time the motorcycle was being kept in the "tack room," which is a storage area for large contraband. Appellant testified he also saw three plain clothes individuals around the motorcycle with articles from the motorcycle's fairing and side pockets lying upon the seat. These observations occurred around 11:00 a. m., according to appellant. A friend of appellant's, Dave Kissel, testified at trial that he also observed people around the motorcycle on two separate occasions during the morning of August 12, 1977. A search warrant was not issued for the motorcycle until the afternoon of August 12, 1977. Pursuant to this warrant, large quantities of controlled substances were removed from the motorcycle during the afternoon of August 12, 1977.

At the suppression hearing, Officer Day testified that he did not, nor did he observe anyone else, search the compartments of the motorcycle prior to the issuance of the search warrant. Lieutenant Munoz testified at the suppression hearing that during the late night—early morning hours of August 11, 1977, when he was on duty at the police station, he saw no one attempt to open any of the compartments on the motorcycle. Lieutenant Munoz had possession of the only key to the tack room until 6:00 a. m., August 12, 1977, when it was turned over to Meade County Sheriff John Egger. Sheriff Egger kept the key with him until the search warrant was issued. He testified at the suppression hearing that he had no knowledge of any search of the motorcycle before the search warrant was issued. Meade County Deputy Sheriff Joe Plambeck testified at the suppression hearing that when the search pursuant to the warrant was conducted, the compartments of the motorcycle had to be unlocked. Deputy Plambeck was present during the search of the motorcycle. Meade County Deputy Sheriff Terry Rose also testified at the suppression hearing that the compartments on the motorcycle were intact when the search of the motorcycle commenced.

On December 20, 1978, the court below denied appellant's motion to suppress evidence consisting of controlled substances removed from the motorcycle on August 12, 1977. The court further ruled that appellant was the owner of the motorcycle and that at no time were any warrantless searches made of said motorcycle.

## ISSUES

### I.

Did the trial court err in finding that no illegal searches were made of appellant's motorcycle? We hold that it did not.

### II.

Was it prejudicial error for drugs, which were eventually denied admittance into evidence, to be placed on the state's attorney's table in full view of the jury during a portion of the trial? We hold that it was not.

### III.

Were the statutory provisions under which appellant was convicted in effect on the date of the offense? We hold that they were.

## IV.

Were the trial court's verdict forms and instructions confusing to the jury and was it necessary to define certain words which reflected elements of the offense? We hold that they were not confusing and it was not necessary to define certain words with specificity.

## V.

Was it prejudicial error when the state failed to produce appellant's motorcycle pursuant to an order by the trial court requiring production? Under the facts, we hold that it was not.

## VI.

Was appellant denied his Sixth Amendment right to confront the witnesses against him because of the failure of a subpoenaed witness to testify at trial when a stipulation existed permitting testimony to be read into the record? We hold that he was not.

## DECISION

### I.

■ Appellant contends that an illegal warrantless search was made of his motorcycle which resulted in the unlawful seizure of controlled substances. Subsequent to an evidentiary suppression hearing, the trial court factually found that, aside from the search made pursuant to the warrant, no other searches of the motorcycle occurred. "A trial court's findings of fact will not be set aside unless they are clearly erroneous, are against a clear preponderance of the evidence, or are not supported by credible evidence." *State v. Spoonemore*, 287 N.W.2d 109, 110 (S.D.1980). SDCL 15-6-52(a) states that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Under the clearly erroneous standard, this Court's function is not to decide factual issues de novo, but rather to determine whether we are definitely con-

vinced that a mistake has been committed. *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508 (S.D.1978).

■ Under this standard, the finding by the trial court is not clearly erroneous. There was ample evidence at the suppression hearing for the trial court to base its decision that no illegal search was made of appellant's motorcycle. We are not blind to the fact that a sharp conflict exists between testimony of the state's witnesses and appellant's witnesses. However, the trial court's exposure to the conduct, temperament, and demeanor of all the witnesses involved increases the inherent reliability of its decision. "It is emphatically not an appropriate function of this Court in a criminal case to 'resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.'" *State v. Minkel*, 89 S.D. 144, 147, 230 N.W.2d 233, 235 (1975); citing *State v. Snell*, 177 Neb. 396, 398, 128 N.W.2d 823, 826 (1964). The trial court simply chose to believe the witnesses testifying for the state and not those testifying for appellant. Upon a review of the record, we cannot say that a finding of fact resulting from that belief was clearly erroneous.

### II.

■ Appellant maintains that it was prejudicial error for the trial court to allow several state's exhibits to be placed on the state's counsel table, in full view of the jury, before they were offered into evidence. The exhibits in question included bottles and containers of phenobarbital, amphetamines, librium, marijuana, one unnamed, uncontrolled substance, and a pipe. They were displayed on the state's counsel table until they were offered into evidence after having been identified by the state chemist, the state's last witness. The charges against appellant were for possession and intent to distribute phencyclidine.

The trial judge raised the question of the exhibits' admissibility on his own motion: "While the thing that concerns me is you have only pled phencyclidine. Why would you need all the rest of that there?" The state's attorney replied "Yeah, I offered

them all full well knowing the Court might not admit those that did not pertain to the counts, but I offered them. If the Court—I can understand that objection." The state's attorney did not try to get the evidence admitted under any theory as to motive, intent, scheme, plan, or system. It appears that the state's attorney displayed these exhibits before the jury. with no apparent intent to introduce them into evidence full well knowing that they did not pertain to the counts charged against appellant. In *People v. Brisco*, 15 Mich.App. 428, 429, 166 N.W.2d 475, 476 (1968), the Michigan Appellate Court states: "The use of evidence in court inadmissible by direct offer, cannot be condoned—entry through the back door cannot be allowed where entry through the front door had been refused."

We do not condone such conduct on the part of prosecuting attorneys. We are not, however, convinced that in this instance the error was prejudicial or that it was properly preserved. Even though appellant's counsel had made a motion to suppress due to the alleged illegality of the search, which was denied, he failed to object to the identification of the exhibits by the state chemist or to make any further motions when the identification showed the nonpertinent nature of the substances. We thus hold that, under these facts, the exhibits placed upon the state's counsel table during the trial and prior to their being offered into evidence did not constitute prejudicial error.

### III.

Appellant was convicted under SDCL 39–17–95 and 39–17–63 as to Count I, and SDCL 39–17–88, SDCL 39–17–91 and SDCL 39–17–63 as to Count II. He contends that the statutes designating his actions on August 11, 1977, as a public offense were not in effect at that time. We do not agree.

■ Under 1976 S.D.Sess.L. ch. 158, § 42–23, SDCL 39–17–88, SDCL 39–17–91, and SDCL 39–17–95 were repealed; the original effective date being April 1, 1977, as per 1976 S.D.Sess.L. ch. 158, § 43–8. Before this repeal went into effect, however, the effective date of the Act was

postponed until October 1, 1977, by 1977 S.D.Sess.L. ch. 188, § 131. The repeal of the statutes under which appellant was convicted did not go into effect until October 1, 1977; hence the statutes were still in effect on the date of appellant's crimes.

■ On a closely related contention, appellant alleges that the "emergency clause" as stated in the South Dakota Constitution, Article III, § 22 which allows for the immediate effectuation of legislative acts was improperly used in delaying the effective date of the statutes previously alluded to. Due to appellant's failure to raise this contention at trial, this issue is not properly before this Court and we decline to discuss the merits thereon. *State v. O'Connor*, 265 N.W.2d 709 (S.D.1978); *State v. Williams*, 84 S.D. 547, 173 N.W.2d 889 (1970).

### IV.

Appellant alleges that the verdict forms and instructions given to the jury were confusing and denied him a fair trial. We do not agree. "When we review the propriety of instructions, we must consider them as a whole to determine whether they adequately set out the law applicable to the case." *State v. Westphal*, 273 N.W.2d 155, 159 (S.D.1978).

■ In his brief appellant separates out the verdict forms and each individual line of the jury instructions in question, juxtaposing them against one another in an attempt to demonstrate their alleged inconsistencies. However, when considered in their entirety, the instructions sufficiently stated all the possible verdict combinations: guilty of both counts, guilty of one count and not guilty of another, and not guilty of both counts. We see no prejudice to appellant in regard to these jury instructions.

■ It is also contended by appellant that the trial court erred in not defining for the jury words which reflect essential elements of the offenses charged. Specifically, appellant refers to the failure of the trial court to define the words "knowingly," as applied to the charge of a controlled

substance, and "intent," as applied to the charge of intent to distribute a controlled substance. In *State v. Henry*, 87 S.D. 454, 210 N.W.2d 169 (1973), we stated that the words "wilfully," "unlawfully," "break," and "intent," as used in the jury instruction in that case were simple words which did not require definition or explanation. In accord with *Henry*, we hold that the words "knowingly" and "intent," as used in the jury instructions given by the trial court, are self-explanatory and readily understood. Further, the instructions explicitly set forth the elements necessary for the state to prove on both Counts. The failure of the trial court to define the words in question does not constitute error.

### V.

■ Appellant maintains that he was denied due process of law because the state failed to produce the motorcycle involved in this case pursuant to an order issued by the trial court on June 6, 1979. Under the due process clause of the United States Constitution, Amendment 14, and South Dakota Constitution, Article VI, § 2, the state is required, upon a defendant's request, to provide any material evidence favorable to the defendant's position if in the state's possession. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On June 9, 1979, the motorcycle was sold by the state. On June 18, 1979, appellant filed a motion to dismiss for failure to produce the motorcycle in question. Appellant's counsel was informed that the state could not comply as the motorcycle had been sold. Appellant's counsel informed the trial court that the motorcycle was needed for *demonstrative* purposes and that it was material to the defense to have the motorcycle in question produced *or to obtain a stipulation* from the state to agree to the introduction of a similar motorcycle. The state agreed that it would have no objection to a similar motorcycle being used for demonstrative purposes. This was then accomplished while appellant's witness was on the stand. Both appellant and the state, openly in the court room, referred to the substitute motorcycle for demonstrative purposes. Since this stipulation was obviously agreed to, appellant should not be heard to complain of the state's failure to produce. Appellant's actions at trial, combined with the aforementioned stipulation, constituted an effective waiver of the due process right appellant maintains he was denied. In light of these facts, we hold that appellant was not prejudiced and his right to due process was not denied.

### VI.

It is urged by appellant that he was denied his right to confront the witnesses against him due to the non-appearance in court of an available state's witness who was subpoenaed by appellant. The witness involved, Sheriff John Eggers, was endorsed by the state on the Information and subpoenaed by the state, but later released. When appellant's counsel was notified of this release, a new subpoena was delivered to the Sheriff's office on the morning of June 18, 1979, the date of the trial. Apparently, Sheriff Eggers was leaving town that day and was never served with the subpoena. During an in-camera discussion with the trial judge and the state's attorney, appellant's attorney stated "I'm not so much concerned about [Sheriff Egger's] testimony, as [the state's attorney] and I have stated previously, he may stipulate to my reading into the record or introducing into the record his testimony at the suppression hearing." Accordingly, Sheriff Egger's prior testimony was read into the record by appellant's attorney during the trial on June 19, 1979.

■ The Sixth Amendment right of an accused in a criminal prosecution to confront the witnesses against him has been made obligatory on the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article VI, § 7 of the South Dakota Constitution assures an accused the right "to meet the witness against him face to face." These protections, however, are not absolute. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284

(1969); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *State v. Heffernan*, 24 S.D. 1, 123 N.W. 87 (1909). As the Court in *Barber v. Page*, supra, noted "[t]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Id.* 390 U.S. at 722, 88 S.Ct. at 1320, 20 L.Ed.2d at '258. The testimony of Sheriff Eggers at the suppression hearing on November 14, 1977, was subjected to cross-examination by appellant's attorney. The right to effective cross-examination, the touchstone of the Sixth Amendment confrontation clause, was not violated by substituting the prior testimony of Sheriff Eggers in place of his personal appearance as a witness during trial. *See McDonnell v. United States*, 472 F.2d 1153 (8th Cir. 1973), cert. denied, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973). This factor, along with the aforementioned stipulation by appellant's attorney, requires us to hold that appellant was not denied his Sixth Amendment right to confront the witnesses against him.

Appellant has raised other contentions of error that were not raised at trial. Hence, they are not properly before this Court and we decline to consider them. *State v. O'Connor*, supra. We have duly reviewed all other arguments raised by appellant and find them without merit.

The judgment is affirmed.

All the Justices concur.